[Crim. No. 11034.   Second Dist., Div. Four.   Mar. 7, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN HUGHES, Defendant and Appellant.

Saul J. Bernard for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kerrigan, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged with a violation of section 12021 of the Penal Code (possession by a felon of a firearm capable of being concealed on the person). After a trial by the court (trial by jury having been duly waived),[1] he was found guilty. A motion for new trial was made and denied; probation was denied; a county jail sentence was imposed.[2] Defendant has appealed.[3]

Having received an anonymous telephone call that a dice game was in progress at apartment 4, 1688 West 24th Street, two police officers proceeded to the place indicated for the

---

[1]Basing his argument on the fact that, while the clerk's transcript recited a waiver, the reporter's transcript did not, counsel for appellant, in his opening brief, argued that the constitutional requirement for personal jury waiver had not been met. At the request of the Attorney General, we augmented the record by a supplemental reporter's transcript of the proceedings at an earlier time, at which the waiver took place. That transcript shows an express waiver, joined in by defendant personally and by both counsel. The point is therefore now shown to be without merit.

[2]Under section 12021 the punishment may, at the option of the trial court, be either imprisonment in the state prison for not more than 15 years or by imprisonment in the county jail for not more than one year, or by a fine of not more than $500.

[3]The notice of appeal is from the "judgment and sentence." No appeal lies from the sentence and that portion will be dismissed.

purpose of investigation. While standing on the sidewalk just outside the location one officer heard voices coming from apartment 4. A male voice said: "I will shoot four dollars; come on seven." The officer then heard another male voice say: "Six is your point." Concluding that a dice game was, in fact, in progress, the officers walked up a stairway and listened outside the door of the apartment. At that point, they heard further conversation. The officers testified that they were able to look into the room, through a one-eighth of an inch crack in the door underneath the door bell, and that, through this aperture, they could see several persons, some standing and some sitting, engaged in rolling dice and, after the dice throws, passing money among them. Without notice or demand for entry, the officers forced open the door and arrested the occupants of the apartment for gambling. Routine search of these persons, after their arrest, disclosed that defendant was in possession of a .38 caliber pistol, with six shells in its chamber. Defendant being an ex-convict, this prosecution under section 12021 followed.

## I

We conclude that, had the officers complied with the requirements of section 844 of the Penal Code, there would have been no question as to their right to enter the apartment, arrest defendant and the other occupants for gambling, and—as an incident to that arrest—search them for weapons as well as for evidence of the crime for which they were arrested. The language heard by the officers was, itself, sufficient to give them reasonable cause to believe that the offense of gambling was then and there being committed; in fact, the language was susceptible of no other reasonable interpretation. And an offense is committed in the "presence" of the officer if he becomes aware of it by the use of any of his senses. (*Sarafini* v. *City & County of San Francisco* (1956) 143 Cal.App.2d 570 [300 P.2d 44]; *People* v. *Bock Leung Chew* (1956) 142 Cal.App.2d 400 [298 P.2d 118]; Witkin, Cal. Criminal Procedure, (1963) § 105, pp. 104-105.)

Defendant contended that it was a physical impossibility for the officers to have viewed the proceedings inside the apartment through the aperture they described and that, therefore, their testimony as to what they heard was effectively impeached. The matter was extensively reviewed on a motion for new trial. On sharply conflicting evidence as to

the condition of the door before and after the entry,[4] the trial court denied the motion, expressly accepting the testimony of the officers. Since we are, on appeal, bound by such a factual finding of the trial court, it follows that the officers had both the evidence of what they heard and the evidence of what they saw. An arrest was justified under the provisions of subdivision 1 of section 836 of the Penal Code.

## II

However, defendant contends that since, admittedly, the officers forced an entry into the apartment without compliance with the requirements of section 844 of the Penal Code relating to notice and demand,[5] the entry, and therefore the arrest and search, were illegal and the evidence of possession of the pistol inadmissible.

The Attorney General points to the now established rule in this state as set forth in *People* v. *Maddox* (1956) 46 Cal.2d 301, at pages 306-307 [294 P.2d 6] : ". . . when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains;" and to the numerous cases holding that a disregard of section 844 is excused where the circumstances are such that the officer reasonably can suspect that, if he follows the requirement of notice and demand, either essential evidence will be destroyed (cf. *People* v. *Aguilar* (1965) 232 Cal.App.2d 173, 177 [42 Cal.Rptr. 666]), or the officer's safety will be endangered. (Cf. *People* v. *Hammond* (1960) 54 Cal.2d 846 [9 Cal.Rptr. 233, 357 P.2d 289].)

But we do not think that the doctrine of these cases is applicable in the case at bench. The whole body of law involved in the so-called "exclusionary rule" is an attempt to balance

---

[4]Defendant, and his witness, testified that, except for repair of a broken lock, the door, door panel, and bell, were in the same condition at the time of trial as they were after the entry, and defendant produced pictures showing an undamaged door panel and a bell installation which supported his contention. The officers testified that they had kicked in the door, severely damaging the door panel, and that the door shown in the pictures was not the door in place at the time of entry.

[5]Section 844. "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

the public interest in effective law enforcement against the public interest in maintaining the traditional freedom of an individual against official intrusion into his home. ■ Where the latter interest is embodied in a constitutional provision, it is now settled that the right of sanctity of the home is dominant and that other interests must yield. (*People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]; *Mapp* v. *Ohio* (1961) 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933].) At the other extreme, where the interest against invasion is merely statutory and the law sought to be enforced is a felony, the interest in effective law enforcement is superior and evidence obtained in violation of the statute may be admitted. (*People* v. *Maddox, supra* (1956) 46 Cal.2d 301.)

But we have found no case subsequent to the adoption of the exclusionary rule in which evidence obtained in violation of either constitutional or statutory restrictions has been admitted where the officers were not seeking to arrest for a suspected felony.[6] Traditionally, the law has imposed on the police a more restricted field of action where mere misdemeanors were involved than where felonious conduct was sought to be prevented or punished. Thus, except in cases of detention of juveniles (where special problems arise)[7] even an officer may arrest without a warrant for a misdemeanor only where it has been committed in his presence (Pen. Code, § 836, subd. 1), and the use of lethal force for the prevention of a crime, or to effect an arrest, is also limited to cases of felonies and is not permissible in cases of misdemeanors (Pen. Code, § 196, subd. 3; Pen. Code, § 197, subd. 1; 1 Witkin, Cal. Crimes (1963) §§ 166-170, pp. 158-163, and cases there cited.)

■ We think that the same distinction should be observed here. There is no suggestion that the officers had any reason to suspect that anything was going on other than a private, "friendly" game among defendant and his guests. It is not suggested that the officers believed that a felony was being committed, or that they had any purpose other than to effect

[6] Not only were we unable to find any case involving a misdemeanor wherein section 844 was discussed but, in response to a suggestion from us at oral argument, the Attorney General has filed a memorandum stating that his efforts in that respect were similarly unavailing.

[7] In 1961, for reasons set forth in the Report of the Special Study Commission on Juvenile Justice (1960), pp. 42-43, the Legislature authorized a peace officer to take a juvenile into custody, without a warrant, in any case where there is reasonable grounds to believe that he is a person falling under any of the provisions of the Juvenile Court Act. (Welf. & Inst. Code, § 625.)

an arrest for a violation of section 330 or 330a of the Penal Code—misdemeanors carrying a maximum penalty of a $500 fine or a six month jail sentence, or a combination of such penalties. No "compelling reason" to prevent the commission of a major crime, or to insure the capture and conviction of a major criminal, presented itself to the officers. Nor are we pointed to any suspicion on their part that any of the gamblers were vicious men or that they might be armed.[8]

Under these circumstances, there was no overwhelming public interest to be served sufficient to excuse the officers from violating rules laid down by the Legislature as a matter of public policy and designed to insure the citizen against a destruction of his property or an invasion of his personal privacy[9] which notice and demand could have made unnecessary. We conclude that the illegality of this entry, under the circumstances herein presented, so tainted the evidence obtained as a result of that entry as to make it inadmissible. ▮ Without such evidence, the conviction is without support and cannot stand.

### III

▮ Defendant objects, also, that the pistol found on his person was never actually introduced into evidence, but merely marked for identification. But the introduction of the weapon itself was not essential to a conviction if the testimony of the officers who saw and examined the pistol had properly been before the court. (*People* v. *Cisneras* (1963) 214 Cal.App.2d 62, 67-68 [29 Cal.Rptr. 146]; *People* v. *Munoz* (1961) 198 Cal.App.2d 649, 652-653 [18 Cal.Rptr. 82]; *People* v. *Anderson* (1948) 87 Cal.App.2d 857, 861 [197 P.2d 839].)

The purported appeal from the sentence is dismissed; the judgment is reversed.

Files, P. J., and Jefferson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 4, 1966. McComb, J., was of the opinion that the petition should be granted.

---

[8]The present record does not disclose a case where the officers might reasonably have feared that compliance with section 844 would endanger their lives. We do not pass on that issue and nothing herein said is intended to foreclose discussion of it when raised by a record showing the existence of such a situation.

[9]See, for example, the conduct which this court condemned (although without citation of section 844) in *People* v. *Pereda* (1964) 229 Cal. App.2d 814, 819-820 [40 Cal.Rptr. 566].