[Civ. No. 32098. Second Dist., Div. Four. Dec. 11, 1967.]

EDWARD LEON PITTMAN, Petitioner, v. THE SUPE-
RIOR COURT OF LOS ANGELES COUNTY, Respond-
ent; THE PEOPLE, Real Party in Interest.

Malter & Hersh and Henley Saltzburg for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Real Party in Interest.

FILES, P. J.—By information petitioner was charged with two offenses: count I, a violation of Penal Code section 245, subdivision (b) (assault with a deadly weapon upon a peace officer); count II, a violation of Penal Code section 330 (gaming). Before pleading, petitioner moved the superior court to dismiss both counts, pursuant to Penal Code section 995, upon the ground that he had been committed without reasonable or probable cause. That motion was denied. Thereupon petitioner commenced this proceeding under Penal Code section 999a for a review of that decision.

The magistrate's commitment is based entirely upon the testimony of a single witness, Deputy Sheriff Barrier, which is here summarized.

At about 12:20 a.m. on June 10, 1967, Deputy Barrier and five other officers of the vice detail approached a vacant house at which they had been told (by informants not identified in the record) that there would be gambling. Through the windows the officers observed six men playing "a low ball stud game" with cards. They forced entry, without prior warning, because their informants had said that those who had played cards there in the past had been armed, and the officers believed their lives would be in danger if they announced themselves before entering. As Officer Barrier entered he held his badge in his left hand and announced, "Sheriff's vice officers." Thereupon petitioner withdrew a Derringer pistol from the waistband of his trousers, pointed it at Barrier and said: " 'Don't touch me or I will fire.' " Other officers, with weapons drawn, ordered petitioner to drop his gun, which he did.

Barrier then approached petitioner to handcuff him. Petitioner struck out with his fist, but missed the officer. In the scuffle Barrier, another officer and petitioner fell to the floor, and petitioner kicked Deputy Barrier "in the groin area." The deputies then succeeded in handcuffing petitioner. Subsequent examination showed that the Derringer was loaded.

 With respect to the gaming charge the commitment

lacks legal cause in that there is no evidence that the card game was played for money, checks, credit or other representative of value.[1]

The witness did not testify that he saw anything other than cards used in the game, and there is no testimony of any conversation by the players which might indicate they were playing for stakes. Playing cards is not, by itself, a violation of section 330.

The evidence does support reasonable cause to believe that petitioner violated Penal Code section 245, subdivision (b), and should be required to stand trial for that alleged offense.[2]

The officers were not in uniform, and thus there may be a factual issue to be tried as to whether petitioner understood that Deputy Barrier was an officer of the law. Barrier's testimony that he displayed his badge and identified himself orally constitutes prima facie proof that petitioner heard and understood. If petitioner did so understand, it was his duty to refrain from using force or any weapon to resist arrest. (Pen. Code, § 834a.)

Even if the arrest was unlawful, that would not justify or excuse an assault upon the officer. The remedy for improper police conduct is in the courts, not in private reprisal. (*People* v. *Coffey,* 67 Cal.2d 204, 221, fn. 18 [60 Cal. Rptr. 457, 430 P.2d 15] ; *People* v. *Baca,* 247 Cal.App.2d 487, 496 [55 Cal.Rptr. 681].)

A loaded firearm is, as a matter of law, a deadly

---

[1]Penal Code section 330: ''Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employé, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noire, rondo, tan, fan-tan, stud-horse poker, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of said prohibited games, is guilty of a misdemeanor, . . .''

[2]Penal Code section 245, subdivision (b) : ''Every person who commits an assault with a deadly weapon or instrument or by any means likely to produce great bodily injury upon the person of a peace officer or fireman, and who knows or reasonably should know that such victim is a peace officer or fireman engaged in the performance of his duties, when such peace officer or fireman is engaged in the performance of his duties shall be punished by imprisonment in the state prison not exceeding 15 years; provided, that if such person has previously been convicted of a felony under the laws of this state or has previously been convicted of an offense under the laws of any other state or of the United States which, if committed in this state, would have been punishable as a felony, he shall be punished by imprisonment in the state prison for five years to life. ''. . .''

weapon. (*People* v. *Pearson,* 150 Cal.App.2d 811, 816 [311 P.2d 142].) ▮ Petitioner argues that the evidence here is insufficient because the weapon itself was not produced in evidence, and there is no testimony that anyone had inspected or tested it to ascertain that the gun was in working order and that the cartridge was a live one. Petitioner has cited no authority for such a strict requirement of proof. The testimony here is that the object was a gun, that it was loaded, that it contained one .22 caliber bullet, and that petitioner pointed it at the officer and said, " 'Don't touch me or I will fire.' " Under the circumstances this is a sufficient prima facie showing that petitioner had the present ability, as well as the intent, to inflict a fatal wound.

Petitioner also contends that all of the evidence concerning the assault is inadmissible as the product of an illegal entry, citing *People* v. *Hughes,* 240 Cal.App.2d 615 [49 Cal.Rptr. 767]. In *Hughes,* the officers broke into an apartment to arrest men who were gambling with dice. There they found Hughes, a convicted felon, with a pistol in his possession. Hughes' conviction for illegal possession of the pistol (Pen. Code, § 12021) was reversed because all of the evidence had been obtained by an illegal entry, the officers having failed to announce themselves and demand admittance in conformity with Penal Code section 844. The *Hughes* opinion points out that under the circumstances there presented, the officers had no excuse for failure to follow the requirements of the code; hence the evidence obtained as a result of the entry was inadmissible under *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].

▮ In the case at bench assuming, without deciding, that the deputies entered the house illegally, the evidence of the assault which followed is not inadmissible.

The rule excluding evidence obtained by illegal entries was adopted for the purpose of eliminating the incentive for police officers to use illegal methods. (*Elkins* v. *United States,* 364 U.S. 206, 217 [4 L.Ed.2d 1669, 1677, 80 S.Ct. 1437] ; *People* v. *Cahan, supra,* at p. 445.) That purpose is not advanced by forbidding proof of assaults committed against an officer following his entry. Had the petitioner in this case pulled the trigger, as he threatened to do, he might have killed the officer. The judicial policy of discouraging overzealous entries does not go so far as to authorize imposition of the death penalty upon the offending officer in the discretion of the party offended.

Let a peremptory writ issue restraining the prosecution of petitioner under count II for the alleged violation of Penal Code section 330. With respect to count I the petition is denied.

Jefferson, J., and McCoy, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.