[Crim. No. 12665.   In Bank.   Feb. 13, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ALBERT ALLEN CURTIS, Defendant and Appellant.

James E. Burden, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Marjory E. Winston, Deputy Attorneys General, for Plaintiff and Respondent.

MOSK, J.—Defendant Albert Allen Curtis appeals from a conviction of battery upon a peace officer, a felony. (Pen. Code, § 243.) He challenges both the construction and the constitutionality of Penal Code section 834a and the second sentence of Penal Code section 243, as applied to an allegedly unlawful arrest. We conclude that the proper construction of these sections requires a reversal of defendant's conviction.

Defendant was arrested on the night of July 9, 1966, by Lt. Riley of the Stockton Police Department. Riley was investigating a report of a prowler and had received a cursory description of the suspect as a male Negro, about six feet tall, wearing a white shirt and tan trousers. While cruising the neighborhood in his patrol car, the officer observed defendant, who matched the foregoing general description, walking along the street. Riley pulled up next to defendant and called to him to stop; defendant complied. The officer then emerged from his patrol car in full uniform and told defendant he was under arrest and would have to come along with him. Riley reached for the arm of defendant, and the latter attempted to back away. A violent struggle ensued, during which both men were injured, and defendant was finally subdued and taken into custody by several officers.

Defendant was subsequently acquitted of a charge of burglary, but was convicted of battery upon a peace officer. He challenges this conviction on several grounds.

I

Defendant initially contends that his arrest was unlawful

due to a lack of probable cause and that it was accomplished by the use of excessive force, and therefore his resistance was justified. Under the general common law rule prevailing in most states, an unlawful arrest may be resisted reasonably, and excessive force used by an officer in effecting an arrest may be countered lawfully. Until 1957, this rule prevailed in California. (E.g., *People* v. *Spinosa* (1953) 115 Cal.App.2d 659, 664 [252 P.2d 409].) However, as we shall first discuss, Penal Code section 834a, enacted in 1957, revised the first aspect of that rule.

Section 834a provides: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest." This section, adapted almost verbatim from the Uniform Arrest Act (1942) 28 Virginia Law Review 315, 345, omitted the langugage in section five thereof which explicitly imposed the duty to refrain from resisting an arrest by force "regardless of whether or not there is a legal basis for the arrest." Moreover, section 834a follows immediately section 834, which defines "arrest" as "taking a person into custody, in a case and in the manner *authorized by law*."[1] (Italics added.)

Nonetheless, it has been consistently held that section 834a prohibits forceful resistance to unlawful as well as lawful arrests. (E.g., *People* v. *Rhone* (1968) 267 Cal.App.2d 652, 660 [73 Cal.Rptr. 463]; *Pittman* v. *Superior Court* (1967) 256 Cal.App.2d 795, 797 [64 Cal.Rptr. 473]; *People* v. *Burns* (1961) 198 Cal.App.2d Supp. 839 [18 Cal.Rptr. 921], cited with approval in *People* v. *Coffey* (1967) 67 Cal.2d 204, 221 fn. 18 [60 Cal.Rptr. 457, 430 P.2d 15]; see, e.g., *People* v.

[1]Ordinarily, "statutes which relate to the same general subject matter . . . [are] read and construed together, as one act, each referring to and supplementing the other, though they were passed at different times." (*Estate of Wright* (1929) 98 Cal.App. 633, 635 [277 P. 372].) However, it is unlikely that section 834, even though captioned as a definitional section, was intended to define the term "arrest" as used in all sections in chapter five, title three, part two of the Penal Code ("Arrest, by Whom and How Made"). For example, the narrow definition of "arrest" given in section 834 would make little sense as applied to section 851.5 [right of arrestee to make two phone calls]. Furthermore, since section 834a was enacted almost a century later than section 834, it is reasonable to assume that the Legislature failed to recognize whatever ambiguity is caused by the juxtaposition of those sections.

Likewise, we caution that our present reading of "arrest" for purposes of section 834a has no necessary bearing on the definition of that term in other sections of the Penal Code, where the context may require a different construction.

*Gaines* (1966) 247 Cal.App.2d 141, 146 [55 Cal.Rptr. 283];
Selected 1957 Code Legislation (1957) 32 State Bar J. 501,
609-610.) The legislative history of section 834a strongly sup-
ports this construction. (See, e.g., Report of the Senate
Interim Judiciary Committee, Appendix to Journal of the
Senate (1957) vol. 1, pp. 435-436, 456.) General acceptance of
this apparent intent and its adoption by courts without seri-
ous question for more than a decade cannot be ignored at this
late date. (*People* v. *Hallner* (1954) 43 Cal.2d 715, 719-721
[277 P.2d 393]; cf. *State Comp. Ins. Fund* v. *McConnell*
(1956) 46 Cal.2d 330, 340-341 [294 P.2d 440].) We find no
reason to reject the firmly established judicial construction of
section 834a.[2]

We hold, therefore, that section 834a prohibits force-
ful resistance to unlawful as well as lawful arrests. Immedi-
ately, however, we are met with a challenge to the constitu-
tionality of that construction; it is said to violate the Fourth
Amendment's prohibition against unreasonable seizures and
the due process clause of the Fourteenth Amendment.

An arrest is a "seizure" and an arrest without a
warrant or probable cause is "unreasonable" within the pur-
view of the Fourth Amendment. (E.g., *Terry* v. *Ohio* (1968)
392 U.S. 1, 16 [20 L.Ed.2d 889, 905, 88 S.Ct. 1868]; *id.*, at p.
37 [20 L.Ed.2d at p. 914] (dissent); *Wong Sun* v. *United*

---

[2]Were this a case of first impression, we might be constrained to hold
that section 834a is ambiguous, in light of the rule that "Statutes are
not presumed to alter the common law otherwise than the act expressly
provides" (*Guardianship of Reynolds* (1943) 60 Cal.App.2d 669, 674
[141 P.2d 498]; accord, *Estate of Elizalde* (1920) 182 Cal. 427, 433
[188 P. 560]), and the juxtaposition of section 834a with section 834
(see fn. 1, *ante*.)

Thus, when section 834a was originally enacted, it was reasonably sus-
ceptible of two constructions: (1) that forceful resistance to all arrests
was prohibited, or (2) that forceful resistance to lawful arrests alone
was prohibited. In penal cases this court has consistently held that the
construction most favorable to the defendant is entitled to every reason-
able doubt in favor of his innocence, whether it be doubt concerning the
facts or the meaning of the statute. (E.g., *In re Murdock* (1968) 68
Cal.2d 313, 317 [66 Cal.Rptr. 380, 437 P.2d 764]; *People* v. *Smith* (1955)
44 Cal.2d 77, 79 [279 P.2d 33].) This rule is particularly appropriate
in a case involving a statute claimed to make criminal an act not for-
bidden by the common law. (*Oakley* v. *Rosen* (1946) 76 Cal.App.2d 310,
314 [173 P.2d 55].)

However, in view of the decisions which have for so long construed
section 834a as prohibiting forceful resistance to all arrests, lawful and
unlawful, the statute cannot now be challenged as ambiguous. "The con-
struction of a statute by judicial decision becomes a part of it" and
cures vagueness or uncertainty on the face of the statute. (*People* v.
*Hallner* (1954) *supra*, 43 Cal.2d at p. 721; compare Quarles, *Some Statu-
tory Construction Problems and Approaches in Criminal Law* (1950)
3 Vand. L.Rev. 531, 539-541.)

*States* (1962) 371 U.S. 471, 479 [9 L.Ed.2d 441, 450, 83 S.Ct. 407]; *Henry* v. *United States* (1959) 361 U.S. 98, 102 [4 L.Ed.2d 134, 138-139, 80 S.Ct. 168].) If section 834a, by eliminating the remedy of self-help, facilitates or sanctions arrests which are by definition unlawful, it could be urged with considerable persuasion that defendant's constitutional rights would be violated by the statute.

While defendant's rights are no doubt violated when he is arrested and detained a matter of days or hours without probable cause,[3] we conclude the state in removing the right to resist does not contribute to or effectuate this deprivation of liberty. In a day when police are armed with lethal and chemical weapons, and possess scientific communication and detection devices readily available for use, it has become highly unlikely that a suspect, using *reasonable* force, can escape from or effectively deter an arrest, whether lawful or unlawful. His accomplishment is generally limited to temporary evasion, merely rendering the officer's task more difficult or prolonged. Thus self-help as a practical remedy is anachronistic, whatever may have been its original justification or efficacy in an era when the common law doctrine permitting resistance evolved. (See, e.g., Note (1967) 7 Natural Resources J. 119.) Indeed, self-help not infrequently causes far graver consequences for both the officer and the suspect than does the unlawful arrest itself. Accordingly, the state, in deleting the right to resist, has not actually altered or diminished the remedies available against the illegality of an arrest without probable cause; it has merely required a person to submit peacefully to the inevitable and to pursue his available remedies through the orderly judicial process.

We are not unmindful that under present conditions the available remedies for unlawful arrest—release followed by civil or criminal action against the offending officer—may be deemed inadequate. (See, e.g., *People* v. *Cahan* (1955) 44 Cal.2d 434, 448 [282 P.2d 905, 50 A.L.R.2d 513]; Note (1966) 27 U.Pitt.L.Rev. 716.) However, this circumstance does not elevate physical resistance to anything other than the least effective and desirable of all possible remedies; as such its

---

[3] The United States Supreme Court has made it abundantly clear that a "stop and frisk" short of arrest is no "petty indignity" but a major intrusion on one's freedom from unreasonable searches and seizures. (*Terry* v. *Ohio* (1968) *supra*, 392 U.S. 1, 16-17 [20 L.Ed.2d 889, 905-906].) The People's implications notwithstanding, there is nothing *de minimis* about any arrest, whether the detention is terminated by release after a few days or a few hours.

rejection, particularly when balanced against the state's interest in discouraging violence, cannot realistically be considered an affirmative "seizure" or deprivation of liberty.

Thus there is no denial of due process because the deprivation of liberty which an individual suffers upon an unlawful arrest is in no substantial or practical way effectuated, sanctioned or increased by section 834a. There is no constitutional impediment to the state's policy of removing controversies over the legality of an arrest from the streets to the courtroom.

## II

Our task, however, is by no means completed with the foregoing construction of section 834a. Defendant was charged not with simply battery, a misdemeanor, but with battery upon a peace officer "engaged in the performance of his duties," a felony under Penal Code section 243. ▮▮▮ Unlike section 834a, which had no predecessor when enacted in 1957, the language of section 243, speaking in terms of the officer's "duty," has been incorporated in section 148 of the Penal Code since 1872. The latter section makes it a misdemeanor to resist, delay or obstruct an officer in the discharge of "any duty of his office." Section 148 has long been construed by the courts as applying only to lawful arrests, because. "An officer is under no duty to make an unlawful arrest." (*Jackson* v. *Superior Court* (1950) 98 Cal.App.2d 183, 189 [219 P.2d 879]; accord, *People* v. *Craig* (1881) 59 Cal. 370; *People* v. *Perry* (1947) 79 Cal.App.2d Supp. 906, 908 [180 P.2d 465].) Even if section 834a now makes it a *citizen's* duty not to resist an unlawful arrest, this change in the law in no way purports to include an unlawful arrest within the performance of an *officer's* duty.[4]

Moreover, simply as a matter of statutory construction, it is clear that section 834a was meant at most to eliminate the common law defense of resistance to unlawful arrest, and not

[4]In the recent case of *United States* v. *Dentice* (E.D.Wis. 1968) 289 F.Supp. 799, the defendant was charged with resisting an officer "engaged in the performance of his official duties" when the officer attempted to execute a search warrant. The court emphasized that the validity of the warrant was crucial to a conviction because "the statute making it a crime to resist an officer in the performance of his official duties [requires] that the officer *in fact* be acting in an official capacity— i.e., pursuant to valid authority . . . ." (*Id.* at p. 800; cf. *Landry* v. *Daley* (N.D.Ill. 1968) 280 F.Supp. 938, 959-960.) A similar rule prevails in most jurisdictions. (See, e.g., *State* v. *Cesero* (1959) 146 Conn. 375 [151 A.2d 338]; *Sparks* v. *United States* (6th Cir. 1937) 90 F.2d 61; *Brown* v. *United States* (5th Cir. 1931) 47 F.2d 681; *United States* v. *Pitotto* (D.Ore. 1920) 267 F. 603.)

to make such resistance a new substantive crime. This interpretation is borne out by reference to legislative hearings at which there were discussions on the purpose of section 834a.[5] Significantly, both the Uniform Arrest Act, from which the language of section 834a was drawn, and the Model Penal Code take the approach of eliminating the defense but declining to make resistance a separate and additional crime. When section 834a was enacted in 1957, the Legislature amended the penalty provisions but did not change the ''duty'' language of section 148, thereby impliedly adopting the prior judicial interpretation of ''duty.'' (*Summers* v. *Freeman* (1954) 128 Cal.App.2d 828, 832 [276 P.2d 131].) In 1961 the Legislature chose to use the same key language in amending section 243, the statute with which we are here concerned. ██ ''[T]he rule of law is well established that where the legislature uses terms already judicially construed, 'the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts.' '' (*City of Long Beach* v. *Marshall* (1938) 11 Cal.2d 609, 620 [82 P.2d 362]; accord, *People* v. *Hallner* (1954) *supra,* 43 Cal.2d 715, 719.) ██ Therefore we must construe section 243, like section 148, as excluding unlawful arrests from its definition of ''duty.'' This in no way thwarts the legislative purpose to consign to the courtroom all controversies over legality. (*People* v. *Coffey* (1967) *supra,* 67 Cal.2d 204, 221 fn. 18.) We confirm that a resisting defendant commits a public offense; but if the arrest is ultimately determined factually to be unlawful, the defendant can be validly convicted only of

[5]See Laws of Arrest, Minutes of Public Hearing of Assembly Interim Committee on Criminal Procedure, February 18-19, 1960.

Robert Burns, Assistant City Attorney of Los Angeles, testified as follows regarding the application of section 834a to section 148: ''We took away the right to resist [an unlawful arrest], but we didn't make it a new kind of a crime, resisting. It's still the same old crime. However, let's take your example—the officer's absolutely wrong. He hasn't probable cause—you're not guilty of 148, resisting an officer in the performance of his duty, because he has no duty to make.'' (*Id.* at p. 26.)

John M. Price, District Attorney of Sacramento County, apparently agreed with this statement and said that he considered section 148 the ''substantive section and 834(a) to me is just a policy section.'' (*Id.* at p. 110.) (See also, 22 Assembly Interim Com. Rep. No. 1, Criminal Procedure (1959-1961), pp. 25-28.)

It is, of course, well established that ''The contemporaneous and practical construction of a statute by those whose duty it is to carry it into effect, while not controlling, is given great respect.'' (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 643 [122 P.2d 526]; accord, *State Comp. Ins. Fund* v. *McConnell* (1956) *supra,* 46 Cal.2d 330, 340-341.)

simple assault or battery. Cases holding or implying the contrary are disapproved.[6]

### III

Defendant contends that his arrest was not only lacking in probable cause and thus unlawful, but also was accomplished with excessive force and hence he was justified in employing counterforce in self-defense. Some courts appear to have incorrectly treated these two problems unitarily (see, e.g.. *People* v. *Baca* (1966) *supra,* 247 Cal.App.2d 487, 495), as if a technically unlawful arrest were identical with an overly forceful arrest.

There are, however, two distinct and separate rights at stake. The common law rule allowing resistance to technically unlawful arrests protects a person's freedom from unreasonable seizure and confinement; the rule allowing resistance to excessive force, which applies during a technically lawful *or* unlawful arrest, protects a person's right to bodily integrity and permits resort to self-defense. Liberty can be restored through legal processes, but life and limb cannot be repaired in a courtroom. Therefore any rationale, pragmatic or constitutional, for outlawing resistance to unlawful arrests and resolving the dispute over legality in the courts has no determinative application to the right to resist excessive force. The commentators are unanimous on this point (e.g., Note (1967) 7 Natural Resources J. 119, 126; Note (1962) 39 U.Det.L.J. 595, 597 fn. 11; Note (1956) 9 Okla.L.Rev. 60. 62-63), and the Model Penal Code states it explicitly.[7] ■ Under Penal

[6] (*People* v. *Rhone* (1968) *supra,* 267 Cal.App.2d 652, 660 [§ 243]; *Pittman* v. *Superior Court* (1967) *supra,* 256 Cal.App.2d 795, 797 [§ 245]; *People* v. *Hooker* (1967) 254 Cal.App.2d 878, 882-883 [62 Cal. Rptr. 675] [§ 243]; *People* v. *Baca* (1966) 247 Cal.App.2d 487, 495-496 [55 Cal.Rptr. 681] [§ 245]; *People* v. *Gaines* (1966) *supra,* 247 Cal. App.2d 141, 146 [§ 245]; *People* v. *Burns* (1961) *supra,* 198 Cal.App.2d Supp. 839 [§ 148]. Sections 243 and 245 contain identical amendments in this regard. (See fn. 9 *post.*)

The above construction of sections 148 and 243 as not applying to unlawful arrests makes it unnecessary to reach a potentially difficult constitutional question. Unlike section 834a, which applies only to forceful resistance, section 148 penalizes even passive delay or obstruction of an arrest, such as refusal to cooperate. (See *In re Bacon* (1966) 240 Cal.App.2d 34, 52-53 [49 Cal.Rptr. 322].) The United States Supreme Court has made it clear that ''one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution.'' (*Wright* v. *Georgia* (1963) 373 U.S. 284, 291-292 [10 L.Ed.2d 349, 354-355, 83 S.Ct. 1240].) Yet this would be the result if ''duty'' were construed to include unlawful arrests, since, as we have seen, an arrest without probable cause is by definition an ''unreasonable seizure'' within the Fourth Amendment.

[7] Model Penal Code (Tent. Draft No. 8, 1958) section 3.04. The comments thereto state, at page 19: ''The paragraph, it should be noted,

Code sections 835 and 835a, an officer may lawfully use only *reasonable* force to make an arrest or to overcome resistance. Sections 692 and 693 set forth the basic privilege one has to defend against unlawful force. In the absence of unequivocal language, we cannot ascribe to the Legislature an intention to penalize the exercise of a right it has specifically bestowed.[8]

■ To summarize, then, construing sections 834a and 243, it is now the law of California that a person may not use force to resist any arrest, lawful or unlawful, except that he may use reasonable force to defend life and limb against excessive force; but if it should be determined that resistance was not thus justified, the felony provisions of section 243 apply when the arrest is lawful, and if the arrest is determined to be unlawful the defendant may be convicted only of a misdemeanor.[9]

---

forbids the use of force for the purpose of preventing an arrest; it has *no application when the actor apprehends bodily injury,* as when the arresting officer unlawfully employs or threatens deadly force, unless the actor knows that he is in no peril greater than arrest if he submits to the assertion of authority.'' (Italics added.)

Compare the cases holding that although only ''reasonable'' nondeadly force may be used to resist a technically unlawful arrest, there is no limit to the force that may be employed in self-defense against deadly force by the arresting officer. (E.g., *People* v. *Dallen* (1913) 21 Cal.App. 770, 775 [132 P. 1064]; *Adams* v. *State* (1912) 175 Ala. 8 [57 So. 591]; *State* v. *Smithson* (1933) 54 Nev. 417 [19 P.2d 631].) To the same effect are the numerous cases which hold that even if an arrest is lawful, if the offense is only a misdemeanor and the officer uses deadly force in an attempt to apprehend the suspect, deadly force against the officer by the arrestee is justified. (E.g., *Paramore* v. *State* (1925) 161 Ga. 166 [129 S.E. 772]; *Mullis* v. *State* (1943) 196 Ga. 569 [27 S.E.2d 91]; *Robison* v. *United States* (1910) 4 Okla.Cr. 336 [111 P. 984].) Thus in *Mullis* v. *State, supra,* the court reversed a conviction for murder of an officer because the trial court failed to instruct: (1) that if the arrest was lawful but only for a misdemeanor and the arrestee-defendant was placed in reasonable fear of his life by the officer, the killing was justifiable homicide; and (2) that there was likewise no crime committed if the arrest was unlawful and the arrestee was put in reasonable fear of commission of a felony upon his person by the officer.

These and similar cases clearly demonstrate the distinction between the minimal degree of force, if any, permitted where the arrestee need fear loss of liberty only, and the greater, generally unlimited degree of force permitted where the arrestee's life or limb is imperiled without legal justification.

[8]We therefore need not reach the supplementary question whether an elimination of the right of self-defense is a deprivation of life or liberty without due process of law.

[9]The same rationale regarding increase of penalties applies to interpretation of Penal Code section 245, subdivision (b), enacted at the same time as the second sentence of section 243. However, in section 245, subdivision (b), the increase provided was not from a misdemeanor to a felony, but from the felony of assault with a deadly weapon to the more serious felony of assault with a deadly weapon upon a peace officer ''engaged in the performance of his duties.'' Thus if the peace

## IV

We now apply the foregoing principles to the facts before us. ■ First, as to the lawfulness of the arrest, it appears that the officer lacked probable cause when he arrested defendant. The only information the officer possessed was a description of the suspect's race, the color of his clothing, and the general area of the alleged burglary. No doubt he had sufficient grounds to detain and question defendant (*People* v. *Mickelson* (1963) 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658]) ; but it is evident that he lacked probable cause to arrest him. As in *Mickelson* ''There could have been more than one tall white man with dark hair wearing a red sweater abroad at night in such a metropolitan area'' (*id.* at p. 454), so there could have been more than one Negro in a white shirt and tan trousers in the neighborhood on the night defendant was arrested. Defendant made no furtive or suspicious movements; he stopped on command and was cooperative until the officer attempted to detain him physically; he had a plausible explanation for his whereabouts, since he lived a block from where he was arrested. This is not ''such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion'' that defendant was guilty of the crime. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

■ But we cannot look merely to a formula for probable cause; we must examine the elements of this case in context. The courts and legislatures of this and other states, recognizing that circumstances short of probable cause may often necessitate immediate investigation, have recently confirmed the broad power of police officers to ''stop and frisk'' suspicious persons on the street. (See *Terry* v. *Ohio* (1968) *supra,* 392 U.S. 1; *People* v. *Mickelson* (1963) *supra,* 59 Cal.2d 448.) It was not casually that the United States Supreme Court and this court have distinguished between the ''reasonable cause'' sufficient for a stop and frisk and the probable cause required for an arrest. (*Terry* v. *Ohio, supra,* 392 U.S. at pp. 26-27 [20 L.Ed.2d at pp. 908-909]; *People* v. *Mickelson, supra,* 59

officer was acting unlawfully, only the lesser penalty would apply (§ 245, subd. (a)).

We point out that our definition of ''duty'' for purposes of these companion sections and section 148, like our definition of ''arrest,'' may be inapplicable in different contexts. Thus an early decision relied on in *People* v. *Baca* (1966) *supra,* 247 Cal.App.2d 487, 495-496, which concerned an officer's *liability* to a citizen, is not here in point.

Cal.2d at p. 452.) The stop and frisk rule "wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified." (*People* v. *Mickelson, supra.*) But the purpose and rationale of this departure is defeated when under the very circumstances for which the stop and frisk rule was designed, an officer's first words to a suspect are, "You're under arrest," followed by an attempt at physical detention. The stop and frisk is a "serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." (*Terry* v. *Ohio, supra,* 392 U.S. at p. 17 [20 L.Ed.2d at p. 903].) An arrest is of greater consequence and must be more narrowly circumscribed lest an innocent error be inflated into a major disturbance.

▇ The question of the exercise of reasonable force and the right to self-defense, which we emphasize is distinct from that of the lawfulness of the arrest, is for the trier of fact to determine. ▇ Here the jury had before it evidence which could justify a finding either way, depending upon the credibility of witnesses and the weight of the evidence. The court's instructions merely quoted or paraphrased the Penal Code sections regarding the privilege of self-defense, the duty not to resist an arrest, and an officer's privilege to use reasonable force in effecting an arrest. In view of our conclusions on the law, we must hold that the jury was not adequately instructed as to the rights and duties of the respective parties.

## V

▇ We now come to defendant's remaining contention, since it has merit and the problem probably will arise on retrial. Defendant asserts that he was denied a fair trial in regard to two prior Texas convictions. Both priors were alleged and found to be burglaries, although the record discloses that the second conviction was actually for "theft of property of the value of fifty dollars and over." Even if proved, this could not be considered a "prior felony" under California law. (Pen. Code, §§ 487, 3024; cf. *In re Wolfson* (1947) 30 Cal.2d 20, 23 [180 P.2d 326].) Therefore the finding as to the second prior is not supported by the evidence.

The first prior is claimed to be invalid because of inadequate representation of counsel in the Texas proceeding. If this prior were valid, it could be used to increase defendant's penalty under Penal Code section 3024, and, of course, for

impeachment purposes.[10] The constitutional question of adequate representation, together with that of the fact of conviction, was submitted to the jury here instead of being decided by the court.

We recently stated our view that "the use of a constitutionally invalid prior conviction to impeach testimonial credibility is improper, and . . . to allow such impeachment is error . . . of federal constitutional dimension." (*People* v. *Coffey* (1967) *supra,* 67 Cal.2d 204, 218.) In *Coffey* we also set out the proper procedure for pretrial consideration of the constitutionality of a prior conviction, by means of a hearing out of the presence of the jury (*id.* at pp. 217-218), to be employed where there is a "clear allegation" of the invalidity of the prior. In the instant case defendant did not allege inadequate representation—or lack of representation—until his direct testimony and following his admission of the prior. There was no objection to admission and of course no opportunity for a *pretrial* hearing by the court on this issue. Thus *Coffey* is not directly apposite.

Nevertheless defendant's contention has merit. In *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], the Supreme Court declared unconstitutional a New York practice of submitting to the jury both the evidence of defendant's guilt and that of the voluntariness of his confession, instructing the jury to decide both issues and to ignore the confession if it found it to be involuntary. Obviously a jury could not reasonably be expected to disregard totally a confession it found to be factually true but legally inadequate due to a procedural defect.

A comparable situation is involved here. A jury can no more be expected to disregard a "true" prior conviction because of its unconstitutionality than it can be expected to disregard a confession because it was technically invalid. ▮ California policy clearly requires the question of the constitutionality of a prior conviction to be determined by the court and not by the jury. That the issue arises during and not before trial, so long as the objection is asserted before

---

[10]The People argue that the question of sentencing is moot, since defendant has already served the minimum time for eligibility for parole under even the longer sentence imposed by section 3024. This, of course, overlooks the possibility that defendant will not be granted parole, or that any parole will be extended because of the longer original sentence or because of the two priors. It also does not reach the issue of impeachment or of the prejudicial effect on the jury of considering the truth of the prior at the same time as the question of guilt.

the case is submitted to the jury, appears to be without significance. Thus if defendant attacks the constitutionality of the first prior on retrial, a hearing outside the presence of the jury as outlined in *Coffey* will be the appropriate means of determination.

The judgment is reversed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied March 12, 1969.