Filed 3/28/14  P. v. Cuadro CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B247396 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA074182) |
| v. | |
| CHRISTOPHER ENRIQUEZ CUADRO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel B. Feldstern, Judge.  Affirmed.

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and James William Bilderback II, Supervising Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant and appellant Christopher Enriquez Cuadro was convicted by jury in count 1 of assault with a deadly weapon on a peace officer (Pen. Code, § 245, subd. (c)),[1] in count 2 of willfully evading a peace officer (Veh. Code, § 2800.2, subd. (a)), in count 3 of taking a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a)),[2] and in count 4 of driving under the influence of drugs (Veh. Code, § 23152, subd. (a)).  In a bifurcated court trial, the court found defendant had suffered a prior serious or violent felony conviction (§ 667, subd. (a)), a prior conviction under the three strikes law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), and had served three prior prison terms (§ 667.5, subd. (b)).  The trial court sentenced defendant to 21 years 4 months in state prison.

Defendant contends the trial court committed prejudicial error by failing to sua sponte instruct the jury in count 1 that conviction of assault with a deadly weapon on a peace officer required the jury to find that Officer Ryan Caplette was in the lawful performance of his duties at the time of the offense.  (See Judicial Council of Cal. Crim. Jury Instns. (2012-2013) CALCRIM No. 2670 ["Lawful Performance:  Peace Officer"].)  Defendant reasons there was substantial evidence Officer Caplette was acting outside the lawful performance of his duty by using unreasonable force when he stood in the middle of the street with gun drawn while ordering defendant to stop.  We conclude there was no substantial evidence to support the instruction and affirm.

**FACTS**

Defendant entered the Bombay Spiceland store and restaurant on the afternoon of July 29, 2012, where he harassed and frightened customers and employees with his

---

[1]     All statutory references are to the Penal Code, unless otherwise indicated.

[2]     As to count 3, defendant waived his right to a jury trial on an allegation that he had suffered a prior conviction under Vehicle Code section 10851, subdivision (a), which elevated the charged offense to a violation of section 666.5 (unlawful taking the vehicle of another without the owner's consent with a prior conviction).

"weird" behavior, causing the store owner to twice call 9-1-1 for police assistance. Defendant was very tense and angry, looking out the windows and stating the police were looking for him. Defendant asked everyone in the store for a ride.

Officers Caplette and Noreen Herbert responded to the call of a "415" man disturbing the peace at Bombay Spiceland. Defendant ran outside when he saw the police. The officers were directed to defendant running away. Defendant entered a truck owned by Rafael Delgado. Delgado had moved the truck just outside the motorcycle and jet ski business he owned on Reseda Boulevard. He left the key inside the truck, intending to quickly move it back inside the store.

Officer Caplette, who was one foot from defendant beside the truck, ordered defendant to stop. Delgado ran outside of his store, repeatedly yelling for the officers to shoot defendant. Officer Caplette pulled his gun when defendant ignored his commands, feeling the situation could escalate to the use of deadly force. Defendant started the truck and drove off, requiring Officer Caplette to step back so his foot would not be run over. Defendant drove a short distance but came to the end of the street at a cul-de-sac. He turned the truck around, so it was now facing up the street, in the direction of Officer Caplette.

Defendant accelerated the truck, toward where Officer Caplette had taken a position in the center of the street. The officer had his gun drawn, yelling for defendant to stop. Defendant drove at a speed of 50-60 miles per hour, swerving toward Officer Caplette. Officer Caplette jumped to the side, with the truck barely missing him. As this was happening, Officer Herbert was excitedly calling on the radio for backup assistance from other officers.

Defendant drove the truck back to Reseda Boulevard, a main thoroughfare, where a uniformed officer assigned to the gang unit began a pursuit. The gang officer activated his car's lights and sirens. Defendant drove at a high rate of speed, sometimes on the wrong side of the street, ignoring traffic signals, and nearly colliding with several cars. After defendant travelled 1.6 miles on Reseda Boulevard, the truck was brought to a stop by an officer executing a "pit" maneuver, and defendant was taken into custody. He was

3

administered a breath test that was negative for alcohol. A drug recognition expert examined defendant and concluded he was under the influence of methamphetamine and unable to safely operate a motor vehicle. Analysis of a urine sample from defendant confirmed the expert's opinion.

## DISCUSSION

Defendant's only contention on appeal is that the trial court erred in failing to sua sponte instruct the jury pursuant to CALCRIM No. 2670 that the prosecution was required to prove Officer Caplette was in the lawful performance of his duties at the time of the charged assault with a deadly weapon.[3] The court raised the issue during the

---

[3] CALCRIM No. 2670 provides, in pertinent part, as follows: "The People have the burden of proving beyond a reasonable doubt that (insert name, excluding title) was lawfully performing (his/her) duties as a peace officer. If the People have not met this burden, you must find the defendant not guilty of (insert name[s] of all offense[s] with lawful performance as an element).

"A peace officer is not lawfully performing his or her duties if he or she is (unlawfully arresting or detaining someone/ [or] using unreasonable or excessive force when making or attempting to make an otherwise lawful arrest or detention).

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"C. Use of Force

"[Special rules control the use of force.

"A peace officer may use reasonable force to arrest or detain someone, to prevent escape, to overcome resistance, or in self-defense.

"[If a person knows, or reasonably should know, that a peace officer is arresting or detaining him or her, the person must not use force or any weapon to resist an officer's use of reasonable force. [However, you may not find the defendant guilty of resisting arrest if the arrest was unlawful, even if the defendant knew or reasonably should have known that the officer was arresting him.]]

4

discussion of jury instructions, considered argument from both the prosecution and defense, then ultimately ruled there was no substantial evidence to support giving the instruction. We agree with the trial court the instruction was not required under the facts of this case, and in any event, any error was nonprejudicial.

**Standard of Review**

A trial court must instruct sua sponte on the general principles of law relevant to the issues raised by the evidence. (*People v. Michaels* (2002) 28 Cal.4th 486, 529-530.) General principles of law governing the case are those commonly or closely and openly connected with the facts of the case before the court. (*Ibid.*) We review a claim of error in jury instructions de novo. (*People v. Guiuan* (1998) 18 Cal.4th 558, 569; *People v. Russell* (2006) 144 Cal.App.4th 1415, 1424.)

**Assault with a Deadly Weapon on a Peace Officer**

"Any person who commits an assault with a deadly weapon or instrument, other than a firearm, . . . upon the person of a peace officer . . . , and who knows or reasonably should know that the victim is a peace officer . . . engaged in the performance of his or her duties, when the peace officer . . . is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years." (§ 245, subd. (c).) Our Supreme Court has held that "it is now the law of California that a

---

"If a peace officer uses unreasonable or excessive force while (arresting or attempting to arrest/ [or] detaining or attempting to detain) a person, that person may lawfully use reasonable force to defend himself or herself.

"A person being arrested uses reasonable force when he or she: (1) uses that degree of force that he or she actually believes is reasonably necessary to protect himself or herself from the officer's use of unreasonable or excessive force; and (2) uses no more force than a reasonable person in the same situation would believe is necessary for his or her protection.]"

5

person may not use force to resist any arrest, lawful or unlawful, except that he may use reasonable force to defend life and limb against excessive force . . . ." (*People v. Curtis* (1969) 70 Cal.2d 347, 357, overruled on other grounds in *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1218-1222.)

"[W]hen a statute makes it a crime to commit any act against a peace officer engaged in the performance of his or her duties, part of the corpus delicti of the offense is that the officer was acting lawfully at the time the offense was committed. (*In re Manuel G.* (1997) 16 Cal.4th 805, 815; *People v. Gonzalez* [*supra*,] [at p.] 1179, 1217 [applying rule to section 190.2, subdivision (a)(7)].) Disputed facts relating to the question whether the officer was acting lawfully are for the jury to determine when such an offense is charged. (*People v. Gonzalez*, *supra*, 51 Cal.3d at p. 1217.)" (*People v. Jenkins* (2000) 22 Cal.4th 900, 1020.) The rule is an objective one that operates without regard to a defendant's subjective state of mind. "Rather, the rule is based upon the statutory definition of the crime, and 'flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in "duties," for purposes of an offense defined in such terms, if the officer's conduct is unlawful . . . .' (*People v. Gonzalez*, *supra*, 51 Cal.3d at p. 1217.) Accordingly, the defendant's subjective understanding that the officer's conduct was lawful is not an element of proof." (*People v. Jenkins*, *supra*, at p. 1021.)

**Analysis**

The trial court correctly ruled the record contains no substantial evidence Officer Caplette used unreasonable force or was otherwise acting unlawfully at the time defendant attempted to run him down in the street. Accordingly, the court had no sua sponte duty to instruct pursuant the jury pursuant to CALCRIM No. 2670, as the rules stated in that instruction were not general principles of law connected with the facts of the case before the court. Moreover on this record, defendant could not have suffered prejudice from the lack of the instruction.

Defendant fails to cite to specific authority suggesting that, on the facts presented in this case, Officer Caplette used unreasonable force at the time of the offense charged in count 1. While we have no doubt the general legal principle relied on by defendant is correctly stated, there is no case law to support its application to this case.

An officer is entitled to use deadly force on a felon driving a vehicle in the officer's direction. (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 536-537 [officer was entitled, as a matter of law, to discharge his weapon at a murder suspect who drove toward him in an attempt to hit the officer and flee].) "The law has never been applied to suggest that there is only one reasonable action that an officer may take under a given set of circumstances. There will virtually always be a *range* of conduct that is reasonable. As long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence. It would be unreasonable to require police officers in the field to engage in the sort of complex calculus that would be necessary to determine the 'best' or most effective and least dangerous method of handling an immediate and dangerous situation, particularly when officers are forced to make split-second decisions under tense and often perilous conditions." (*Id*. at pp. 537-538.)

By the time Officer Caplette stood in the street with his gun drawn, shouting for defendant to stop, the officer was already aware that defendant (1) was the subject of two calls to 9-1-1 over his disturbing behavior in Bombay Spiceland, (2) had fled immediately upon seeing the officers arrive, (3) ignored the officers' commands to stop running, (4) entered a truck belonging to Delgado (who was yelling repeatedly for the officers to shoot defendant) and refused to comply with Officer Caplette's order to exit the truck, (5) drove off in the truck, requiring Office Caplette to step back to avoid having his foot run over, and (6) drove down a dead-end street, executed a U-turn, and accelerated toward Officer Caplette's direction at a rate of speed estimated to be 50-60 miles per hour.

Defendant offered no evidence to contradict these facts. He instead argues one interpretation of the evidence was that he was just trying to run away from the police, and that Officer Caplette could have responded differently—he did not need to stand in the street, and if he placed himself out of harm's way, he had no need to draw his gun. Defendant's contention that this case merely involved a suspect fleeing from officers is belied by the evidence detailed above. More importantly, whether there were other tactics Officer Caplette might have employed, nothing in the law requires him to adopt the one deemed reasonable in hindsight by defendant. (*Brown v. Ransweiler*, *supra*, 171 Cal.App.4th at pp. 536-537.)

Defendant was involved involved a fleeing felon trying to use a stolen truck driven at a high rate of speed to run over a pursuing officer, placing that officer and others in the area in danger. Officer Caplette was entitled, as a matter of law, to draw his weapon in response to that threat. (*Brown v. Ransweiler*, *supra*, 171 Cal.App.4th at pp. 536-537.) "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."

8

(*Tennessee v. Garner* (1985) 471 U.S. 1, 11-12; see also *Scott v. Harris* (2007) 550 U.S. 372, 386 ["a police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death"].)

Officer Caplette displayed considerable restraint by repeatedly ordering defendant to stop and by not discharging his weapon in defense of his own life and that of others in the area. There is simply no evidence that Officer Caplette used unreasonable force, which would have justified an instruction pursuant to CALCRIM No. 2670.

Assuming the instruction was required under the facts in this case, we conclude any error was harmless, regardless of the standard of review. (*Chapman v. California* (1967) 386 U.S. 18, 23-24; *People v. Watson* (1956) 46 Cal.2d 818, 836.) The overwhelming evidence establishes that defendant presented a threat to the safety of others throughout the charged offenses. He stole Delgado's car in the presence of the officers, fled in the face of repeated commands to stop, and when cornered on the cul-de-sac, instead of surrendering, he set his sights on running down Officer Caplette. There is no reasonable possibility or probability that had the jury been instructed pursuant to CALCRIM No. 2670, the jury would have found that Officer Caplette acted with unreasonable force at the time of the assault charged in count 1.

**DISPOSITION**

The judgment is affirmed.


KRIEGLER, J.


We concur:


TURNER, P. J.


MINK, J.*

---

* Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.