[Crim. No. 12710.   Second Dist., Div. Two.   Oct. 3, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WAYNE EDWARD HOOKER, Defendant and Appellant.

Thomas J. Gately for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David Gould, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J.—Battery on a peace officer.

About 9 p.m. on September 20, 1965, William Perkins, a police officer of the City of Los Angeles, who worked as a part-time employee for Thrifty Drug Store in detecting and apprehending shoplifters, observed Hooker engaged over a period of 30 minutes in removing various items of merchandise from counters in the drugstore and secreting them on his person. When Hooker left the store without having paid for the merchandise, Perkins displayed his badge and said, ''I'm a police officer and you are under arrest for shoplifting.'' Hooker knocked Perkins down and started to run. Perkins caught up, and Hooker hit him in the head and kicked him several times and again ran away. Perkins again caught up, Hooker drew a knife, and after a series of further scuffles Hooker was shot in the leg and captured.

On September 22 in Los Angeles Municipal Court the City Attorney of Los Angeles filed a complaint against Hooker charging petty theft. Hooker pleaded guilty on November 8, and was sentenced to 60 days in the county jail on November 30.

Meanwhile, on November 4 in the superior court the District Attorney of Los Angeles County filed a felony information charging Hooker with battery against a peace officer engaged in the performance of his duties. Under Penal Code sections 242 and 243, a battery, knowingly committed against a peace officer engaged in the performance of his duties, is classified as a felony rather than a misdemeanor. In March 1966 Hooker was found guilty of the charge and thereafter sentenced to one year in the county jail.

Hooker appeals the judgment. He contends he was punished twice for the same act, and was erroneously convicted of a felony because at the time of the battery Perkins had not been engaged in the performance of duties as a peace officer.

██   Before discussing these contentions we note, preliminarily, that under the procedure established in *Kellett* v. *Superior Court*, 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206], prosecution of criminal charges as closely related in time as these, probably would now require a single proceeding. Here, however, the acts had been performed and the charges filed before the *Kellett* decision was published by the

Supreme Court on January 5, 1966, and we find the defendant not so prejudiced by the operation of the former procedure as to require a retroactive application of the new rule. (*People* v. *Lopez*, 251 Cal.App.2d 918 [60 Cal.Rptr. 72]; *People* v. *Winchell*, 248 Cal.App.2d 580 [56 Cal.Rptr. 782].)

1. *Does the imposition of a sentence for petty theft and a sentence for battery on a peace officer amount to multiple punishment for the same act or omission, contrary to Penal Code, section 654? No.*

As Penal Code section 654 has been judicially interpreted, if several offenses arise out of the same act, or are incident to a single objective, or amount to one course of conduct, then only one punishment may be imposed for the several offenses. (*Neal* v. *State of California*, 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *McFarland*, 58 Cal.2d 748, 760 [26 Cal.Rptr. 473, 376 P.2d 449].) Hooker claims that an escape is part of every successful crime and that he had but one basic aim—to successfully steal and carry away the merchandise.

First, the charges in the present case clearly involve multiple and distinct acts. Unlike *Kellett* v. *Superior Court*, 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], where the charge of exhibition of a firearm in a threatening manner and the charge of possession of a concealable weapon by a felon were both based on the same act of brandishing a pistol, two series of acts were involved here, initially, the acts of concealing merchandise on the person in the drugstore, and, later the acts of striking Officer Perkins outside the drugstore. The first supported the charge of petty theft, and the second the charge of battery. That part of the rule which proscribes multiple punishment for a single act does not apply.

Nor are we dealing with punishment for acts which are incident to a single objective, for clearly the separate acts with which Hooker was charged had separate objectives. His objective in concealing merchandise was to steal it. Hooker substantially achieved that objective at the time he pocketed the merchandise in the store, an achievement made legally conclusive when he later stepped outside the store premises without paying for it. On the other hand, Hooker's objective in hitting Perkins was to avoid arrest, an objective which had no essential connection with the petty theft he had completed at an earlier time. We decline to accept the defendant's argument that commission of any crime implies a successful getaway and that hence only one punishment can be imposed for

anything that occurs, coming and going, in the course of a criminal caper.

Finally, we reject the argument that Hooker's activities amounted to a single course of conduct, such as successive rapes of the same woman, for which only one punishment may be imposed. The petty theft and the battery comprised different kinds of crime, one against property, the other against the person; committed at different times; performed in different locations; and directed against different victims. The conduct was no more unified than it would have been if Hooker had killed a civilian inside the store and subsequently attacked a police officer trying to arrest him outside the store. A unified course of conduct comprises a linked series of events of similar type and quality. This case itself furnishes us with two examples of a true unitary course of conduct: first, Hooker's appropriation of different items of merchandise in the drugstore over a period of 30 minutes, and next, his series of attacks on Perkins. For purposes of punishment the first of these must be grouped as a single theft, and the second as a single battery. But no such unity encompasses together both the series of thefts and the series of batteries. We conclude that separate punishments for petty theft and for battery were justified. (*Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839].)

2. *Was Officer Perkins a peace officer engaged in the performance of his duties within the meaning of Penal Code, sections 242 and 243, when Hooker attacked him? Yes.*

▪ We consider this question from three viewpoints.

Factually viewed, the evidence discloses that Perkins stopped Hooker outside the drugstore, displayed his badge, declared himself a peace officer, and told Hooker he was under arrest for shoplifting. Thereafter Hooker struck Perkins. Perkins was in fact a peace officer, and Hooker had been engaged in shoplifting. From an objective viewpoint there is little reason to doubt that the assault amounted to conduct which had been declared a felony by the statute.

If we look at the event from Hooker's point of view we reach the same result. When Hooker was stopped outside the drugstore by an individual who displayed the badge of a peace officer, Hooker had just committed a crime and it was his duty to submit to arrest. So far as Hooker's obligations were concerned the circumstances which caused Perkins to be present at that particular time and place were immaterial.

The former rule that a person could resist an arrest by a peace officer if the arrest were unlawful was abolished in 1957, and the statute now makes clear and unambiguous the duty of a person arrested by a peace officer to refrain from using force to resist the arrest. (Pen. Code, § 834a; *People* v. *Burns,* 198 Cal.App.2d Supp. 839 [18 Cal.Rptr. 921]; *People* v. *Coffey,* 67 Cal.2d 204, 221 [60 Cal.Rptr. 457, 430 P.2d 15].) Even an innocent person is under a duty to submit to arrest by a peace officer. Much more so one caught red-handed in crime. We see no reason to annul the duty of a person to submit to the authority of a peace officer during a period when special arrangements for the use of the peace officer's services are in effect. For Hooker it was enough to know that Perkins was a peace officer engaged in effecting his arrest for a specific misdemeanor, and under the law even if Hooker had been innocent of all crime, which he was not, it would still have been his duty to submit.

Only when we look at the event from the viewpoint of Perkins do we discover his special relationship to a private group and learn he was present on the premises as a result of his part-time employment by Thrifty Drug Store. Yet it is a legal commonplace to say that a man may possess several capacities and function harmoniously in two or more of them at the same time. A president may act as party leader, as head of state, as chief executive, as commander-in-chief, and perhaps as a candidate for re-election, without undue embarrassment from his multiple capacities. So may a part-time justice of the peace. So may the judges of our courts, who sign warrants and issue writs during non-business hours away from their chambers. The fact that Perkins was privately employed by Thrifty Drug Store need not weaken or destroy his continuing authority as a peace officer. Granted that Perkins wore two hats. Still there is no doubt that at the time of the attempted arrest he had his peace-officer Stetson firmly planted on his forehead, and had publicly undertaken to act as an officer of the law. We think he was functioning at that moment as a peace officer, and the sanctions of Penal Code, sections 242 and 243, for battery against a peace officer applied. In so ruling we do not reject the possibility that Perkins may have been simultaneously functioning in other capacities for other purposes, and that Thrifty Drug Store as his then employer may have been responsible for such incidents of employment as workmen's compensation, social security, and overtime pay, and could have been held liable as a principal for acts of

its agent within the scope of his employment, as for example, false arrest. We merely decide that at the time of the arrest Perkins was acting as a peace officer within the meaning of Penal Code, sections 242 and 243. Any rule that a peace officer only functions while on active duty would unnecessarily weaken the fabric of law enforcement.

The court in *People* v. *Derby,* 177 Cal.App.2d 626 [2 Cal. Rptr. 401], in a comparable situation reached a comparable result. The defendant, convicted of resisting a public officer in the discharge of the duties of his office, contended that the officer was not on duty and therefore had no right to make an arrest. In rejecting this argument the court declared the officer was not required to ignore a clear breach of the peace committed in his presence, whether or not he had completed his particular hours of duty, and cited with approval the statement in *Hanmer* v. *Wells Fargo & Co. Express,* 174 App. Div. 724 [160 N.Y.S. 651], that because of the nature of their employment public officers are under a special duty at all times to use their best efforts to apprehend criminals.

The case of *People* v. *Ketchel,* 59 Cal.2d 503, 525 [30 Cal. Rptr. 538, 381 P.2d 394], likewise supports the view that a peace officer may act as such when his services are needed. Elder, an off-duty police officer who had entered a market during the commission of a robbery, was killed in an exchange of shots while trying to capture the robbers. In sustaining convictions for murder the court upheld Elder's right to make an arrest and his right as a peace officer to carry a concealed weapon. (Pp. 525-526.) Implicit in the decision is a ruling that an off-duty peace officer carries his authority with him, which he may exercise in appropriate circumstances.

Judgment affirmed.

Herndon, J., concurred. Roth, P. J., concurred in the judgment.

Appellant's petition for a hearing by the Supreme Court was denied November 30, 1967.