[Crim. No. 18597. Second Dist., Div. Five. Oct. 19, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES LEE TOWNSEND, Defendant and Appellant.

## COUNSEL

Joe Reichmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Allan J. Goodman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**AISO, J.**—Defendant James Lee Townsend was charged by information with having committed felony batteries upon Officers Everett Bentley (count I) and Andrew Heider (count II) in violation of Penal Code sections 242 and 243.[1] A jury found defendant guilty on count I, but not guilty on count II. Defendant's motion for a new trial and request for probation were denied, and he was sentenced to state prison with the minimum term specified to be six months (Pen. Code, § 1202b). Defendant appeals from the judgment of conviction.

### Contentions on Appeal

The errors alleged to have been committed by the trial judge pertain to evidentiary matters and to inadequate instructions of the jury, more specifically, (1) evidence tending to prove Officer Bentley's bias was improperly excluded, (2) the testimony of witness Hornbeck was not proper rebuttal, (3) the evidence did not establish that Officer Bentley was engaged in the performance of his duties at the time of the alleged battery, (4) the instructions pertaining to battery were inadequate, (5) the court erred in not instructing on the lesser included offense of assault on a police officer in violation of Penal Code sections 240 and 241, and (6) the court erred in not giving the instruction as to the presumption of innocence and the quantum of required proof being that beyond a reasonable doubt in its formal instructions to the jury.

---

[1]The information, the verdicts, and judgment state the felony battery upon a police officer engaged in the performance of his duty and known to the defendant to be such to be a violation of only Penal Code section 242, which merely defines a battery. Absent a demurrer and in view of the reversal of the judgment, the error is not fatal (*People* v. *Cloud* (1969) 1 Cal.App.3d 591, 594, fn. 1 [81 Cal.Rptr. 716]; *People* v. *Scrivens* (1969) 276 Cal.App.2d 429, 432, fn. 4 [81 Cal.Rptr. 86]), but attention is called to the fact that a felony battery such as that charged in this case calls for a violation of Penal Code sections 242 and 243 read together.

## The Evidence

We think it unnecessary to encumber the opinion with a detailed narration of the evidence. Suffice it to state that it was highly in conflict whether defendant was able to ambulate without his crutches and whether he was the one who wielded the crutch which injured Officer Bentley's hand and damaged his watch.

Officer Bentley of the Los Angeles Police Department (alleged victim of count I) was "moonlighting" as a security guard "[b]asically to keep the peace" at a dance held at the San Fernando High School[2] on December 12, 1969. He was paid for his services by the school, but was in uniform and armed.

His fellow officer, Heider (alleged victim in count II), was at the dance on "special assignment at the [high] school as an officer to keep the peace." He was in mufti, but carried his gun, badge, and police identification card.

An assistant boys' vice-principal (hereafter vice-principal) was the school administrative officer in charge of the student activity.

Several times prior to 11 p.m. defendant had sought to get into the dance, but each time was warned by the vice-principal, Officer Bentley, Officer Heider (who displayed his badge and identification to defendant and apprised defendant that he was a police officer), or by Officer Ontriveros (a third officer in attendance) that since defendant was not a member of the student body he could not be admitted and that he had to leave the premises. Defendant did not comply by staying permanently away.

Officers Bentley and Heider testified that around 11 p.m. defendant and a companion, identified by his jacket as Jerry Amos Otis, and who testified for the defense at the trial, again tried to gain entrance, but were physically removed from the entranceway by the police officers. Thereupon, defendant became angered and propelled a crutch through the glass portion of an entrance door, reamed out the broken aperture, and tried to hit the rebuttal witness, instructor Hornbeck, and the two officers. A piece of the shattering glass lodged in Officer Heider's eyelid and another caused a slight laceration in the area of his eyes. Medical attention was not required as a cafeteria worker was able to remove the piece of glass.

Officer Bentley managed to get the broken door shut and then reached for his baton. It fell to the ground, however, and as he bent down to re-

---

[2]We judicially note that this school is actually located within the city limits of Los Angeles, and not San Fernando. (Evid. Code, § 452, subd. (h).)

trieve it, something hit his left hand, causing a minor laceration and breaking his wristwatch. At that moment, he saw a crutch "drop away" and "defendant . . . holding the crutch." Officer Heider heard Officer Bentley cry out in pain at the time.

Thereafter, a steel trash can was hurled through the damaged door window. Officer Bentley stated it was defendant who hurled it and that defendant was at that time moving about without his crutches. Both officers testified that defendant appeared able to get about without crutches when enraged, although at other intervals he would rest upon them. Both officers testified to a scuffle that defendant had with a third party outside, during which he did not use crutches while engaging in a wrestling type of tussle.

Defendant, his mother, and his companion, Jerry Amos Otis, testified that defendant was not able to ambulate without crutches that evening. Defendant had suffered a broken leg in an accident in September and his cast was removed only three days prior to the fracas. Both defendant and Otis testified that defendant did not hurl his crutch either through the window or against Officer Bentley, that it was another person who did so. Otis testified that he, not defendant, threw the trash can through the door window.

Against defense objections that it was improper rebuttal, William Hewitt Hornbeck, a mathematics and physical education teacher who helped supervise the dance, testified that he saw defendant that evening but defendant did not appear to need his crutches to walk with and that it was defendant who put a crutch through the window portion of the outside door.

Other details will be alluded to where necessary in the discussion.

### Discussion

I. *Matters pertaining to evidence:*

█ A. *Evidence re bias.* The trial judge did not err in sustaining objections during cross-examination of Officer Bentley with reference to questions seeking to develop facts that another person who was a participant in the fracas at the high school dance who hit Officer Bentley was charged with a misdemeanor only—defendant contending that this proves bias of Officer Bentley against defendant. The matter of permitting impeachment evidence on collateral matters such as this is now in the discretion of the trial judge. (*People* v. *Eisenberg* (1968) 266 Cal.App.2d 606, 615 [72 Cal.Rptr. 390].) Furthermore, the decisions as to whether any person

shall be prosecuted and as to whether the charge is to be a felony or a misdemeanor, are matters more in the discretion of the district attorney, rather than the arresting officer. (See *Taliaferro* v. *Locke* (1960) 182 Cal.App.2d 752, 755-757 [6 Cal.Rptr. 813]; Witkin, Cal. Criminal Procedure (1963) § 6, pp. 6-7, and Hall et al., Modern Criminal Procedure (1969) ch. 14, pp. 736-787.) Thus, it is difficult to perceive how the facts sought to be elicited would have constituted impeachment of Officer Bentley.

■ B. *Rebuttal testimony proper.* The rebuttal testimony of instructor Hornbeck was properly admitted. In *People* v. *Harrison* (1963) 59 Cal.2d 622, 629 [30 Cal.Rptr. 841, 381 P.2d 665], our Supreme Court stated: "While it is improper for the prosecutor to withhold evidence which is properly a part of his case in chief and offer it after the defense has closed its case, such evidence may be used by the prosecutor where it comes within the rules of impeachment and may be admitted on rebuttal to meet evidence upon a point put into dispute by the testimony for the defense. [Citations omitted.]" (See, also, *People* v. *Warner* (1969) 270 Cal.App.2d 900, 906 [76 Cal.Rptr. 160].)

Here defendant and his companion, Jerry Amos Otis, testified in defense that defendant neither hit Officer Bentley with his crutch nor propelled the crutch through the glass portion of the door. Defendant and Otis likewise testified that defendant did not hurl the trash can through the window. Otis went to the extent of assuming responsibility for that act. Defendant, his mother (Mrs. Hettie Townsend), and Otis testified that defendant was not able to ambulate without his crutches. Under such circumstances, it was proper for the People to put on instructor Hornbeck to refute portions of the defense testimony.

■ C. *Officer Bentley was engaged in performance of his duty.* Defendant contends that a police officer who is "moonlighting" is to be considered as performing his duty only when he is effecting an arrest, citing the facts in *People* v. *Hooker* (1967) 254 Cal.App.2d 878 [62 Cal.Rptr. 675]. In *Hooker,* defendant struck a police officer, who was working as a part-time employee of the Thrifty Drug Store to apprehend shoplifters and to prevent shoplifting, at a time when the officer was arresting defendant Hooker outside the store for shoplifting. It was held that the officer was a peace officer in the performance of his duty within the meaning of Penal Code sections 242 and 243. Although *Hooker* was disapproved in *People* v. *Curtis* (1969) 70 Cal.2d 347, 356, fn. 6 [74 Cal.Rptr. 713, 450 P.2d 33], it was only insofar as it implied that a person cannot resist an unlawful arrest, such as when excessive force is used. We think defendant's contention is too narrow a construction of a "peace officer . . . engaged in

the performance of his duties." The main purpose of the presence of Officer Bentley and of his two colleagues was to maintain peace at the dance and to assist the school officials in keeping out intruders who were not members of the student body.

In *Williams* v. *State* (1969) 45 Wis.2d 44 [172 N.W.2d 31], an off duty policeman in uniform was enroute home after "working in uniform as a guard at a wedding" when he came upon a fight on the street and arrested the participants. It was held that he was acting in his official capacity when breaking up the fight and that defendant was, therefore, properly convicted of having committed a battery upon a peace officer acting in his official capacity.[3] The Wisconsin Supreme Court stated: "It is true that Hill [police officer] was not on duty when he first saw the fight. However, as soon as he became aware of the situation and took action he was no longer off-duty. Hill did what any officer of the law is supposed to do, and attempted to preserve public peace and order.[2] It was certainly no 'personal frolic' for him to . . . attempt to break up a fight. There is, therefore, no merit in defendant's assertion that Hill was not acting in his official capacity when the cffense took place." (45 Wis.2d at p. 48 [172 N.W.2d at p. 33].)

Our Government Ccde sections 26600 and 27823 expressly enjoin on sheriffs and constables the preservation of the peace as part of their duties. Lcs Angeles City Charter sections 198, 200, and 201 constitute municipal legislation of similar import.[4] The court in *Christal* v. *Police Commission* (1939) 33 Cal.App.2d 564, 567 [92 P.2d 416], stated with reference to city police officers: "[Police] officers are the guardians of the peace and

[3]The statute in question read: "Whoever causes bodily harm to a peace officer, as defined in s. 939.22(22), or fireman. acting in his official capacity and the person knows or has reason to know that the victim is a peace officer or fireman, by an act done with intent to cause bodily harm to the neace officer or fireman. without consent of the person so injured, may be imprisoned not more than 2 years." (Fn. 1, 45 Wis.2d at p. 45 [172 N.W.2d at p. 31].)

"[2][Fn. 2 in the quotation read in part:] '(22) "Peace officer" means any person vested by law with a duty to maintain public order or to make arrests for crime, whether that duty extends to all crimes or is limited to specific crimes.' " (Fn. 2, 45 Wis.2d at p. 48 [172 N.W.2d at p. 33].)

[4]"Sec. 198. The Police Department shall have the power and duty to enforce the penal provisions . . . of the laws of the state. . . . In the discharge of said powers and duties the members of said department shall have the powers and duties of peace officers as defined by state law."

In prescribing the duties of the chief of police, sections 200 and 201 provide: "Sec. 200. He shall suppress all riots, disturbances and breaches of the peace, and to that end may call on any person to aid him. . . ." "Sec. 201. He shall have, in the discharge of his proper duties, like powers and be subject to like responsibilities as a Sheriff in similar cases."

security of the community . . . . Among the duties of police officers are those of preventing the commission of crime. . . ." Breach of the peace is a crime. (Pen. Code, § 415.) More specifically, Penal Code section 626.8 made it a crime for any person who comes into any school building or upon any school ground, without lawful business thereon, and whose presence or acts interfere with the peaceful conduct of the activities of such school or disrupt its pupils or school activities, and who remains there, or reenters or comes upon the school premises within 72 hours after having been asked to leave by an accredited administrative official in charge. The high school buildings and grounds were public property and the locus of the crimes charged occurred in a public place. (Cf. *In re Zorn* (1963) 59 Cal.2d 650, 652 [30 Cal.Rptr. 811, 381 P.2d 635]; *People* v. *Green* (1971) 15 Cal.App.3d 766, 771 [93 Cal.Rptr. 433].)

In *People* v. *Derby* (1960) 177 Cal.App.2d 626, 630 [2 Cal.Rptr. 401], the court holding that California Highway Patrol officers in uniform were still peace officers even after their official duty hours, stated: "Furthermore, it is clear that a breach of the peace was committed in the officers' presence, and they were not required to ignore this conduct on the part of the appellant whether or not their particular hours of duty had been completed."

When Officer Bentley was struck on his left hand by defendant wielding his crutch, he was in the act of retrieving his baton which he intended to use, in lieu of a firearm, to restore order and to prevent further damage to public property. Earlier, he was assisting the assistant boys' vice-principal in charge in enforcing provisions of Penal Code section 626.8. We hold that Officer Bentley was engaged in the performance of his duty as a peace officer and that the evidence sustains the verdict finding that defendant struck Officer Bentley and thereby violated the provisions of Penal Code sections 242 and 243.

## II. *Jury instructions:*

■ We agree that the instructions given to the jury were either confusing or inadequate. At the time this case was given to the jury, CALJIC (3d ed. 1970) did not contain what is now CALJIC No. 9.51.[5] In absence thereof, the trial judge defined battery in terms of the statute. (Pen. Code, § 242.) But he accompanied it with an instruction which he tailored from

---

[5]Current CALJIC 9.51: "Every person who, wilfully and unlawfully, uses any force or violence upon the person of a [peace officer] [fireman], and the person using the force or violence knows or reasonably should know that the other person is a [peace officer] [fireman] and that he is engaged in the performance of his duties, is guilty of a felony."

CALJIC 9.04, now superseded.[6] This instruction had the following sentence which applies to an assault[7] and not a battery: "The necessary elements of the offense are the unlawful attempt with the specific intent to commit a violent injury upon the person of another, and the then present ability to accomplish the injury." Under this instruction, the jury could have found a battery without even an offensive touching of the victim's person.

We think the state of the evidence also called for the giving of an instruction on an assault upon a peace officer (see current CALJIC No. 9.50), as a lesser and necessarily included offense. *People* v. *Hood* (1969) 1 Cal.3d 444, 449-450 [82 Cal.Rptr. 618, 462 P.2d 370], had made it mandatory for the trial judge to instruct *sua sponte* on all lesser and necessarily included offenses where the evidence was within the area prescribed by *People* v. *Carmen* (1951) 36 Cal.2d 768, 772-773 [228 P.2d 281]. Although a battery upon a police officer (Pen. Code, §§ 242, 243) and assault upon a police officer (Pen. Code, §§ 240, 241) are both so-called "hybrid felonies" (those carrying alternative county jail sentences), Penal Code section 241 prescribes the alternative state prison to be "by imprisonment in the state prison not exceeding two years," whereas Penal Code section 243 states that for a battery on a police officer, it shall be "by imprisonment in the state prison for not less than 1 nor more than 10 years." Thus by virtue of carrying lesser minimum and maximum sentences, the assault upon a police officer is a crime of lesser gravity than a battery upon such officer. At the conviction stage, as opposed to the sentencing stage, of the criminal proceedings, the fact that defendant was ultimately given the benefit of Penal Code section 1202b, specifying a minimum sentence of six months, was immaterial. Furthermore, Penal Code section 18a provides: "Except in cases where a different minimum punishment is prescribed by any law of this state, for every offense declared to be a felony and punishable by imprisonment in the state prison, the minimum imprisonment shall be imprisonment in any of the state prisons for not less than six months." Had the jury returned a verdict finding defendant

---

[6]As tailored, this read: "Every person who commits a battery upon the person of a peace officer engaged in the performance of his duties and who knows or reasonably should know that such person is a peace officer and is engaged in the performance of his duties is guilty of a crime. [Par.] To constitute a battery, actual injury need not be caused. *The necessary elements of the offense are the unlawful attempt with the specific intent to commit a violent injury upon the person of another, and the then present ability to accomplish the injury.* If an injury is inflicted, that fact may be considered by the jury, in connection with all the evidence, in determining the means used, the manner in which the injury was inflicted, and the type of offense committed." (Italics added.)

[7]As to the use of "specific intent," please see discussion below as to instructions re assault.

guilty of an assault on a police officer, there would have been no necessity of invoking Penal Code section 1202b.

The finding, implied in the verdict finding defendant guilty of a battery on a police officer, rests upon circumstantial evidence as to the identity of the person striking Officer Bentley's left hand, whereas the testimony of percipient witnesses establishes that defendant was threatening injury to Officers Bentley and Heider by poking his crutch through the glass portion of the door, reaming the shattered glass aperture, and trying to hit them.

Whether an off duty police officer, in uniform and paid by a source other than from his official employer, in preserving the peace at a public high school dance, assisting the vice-principal to keep out intruders, and protecting the public high school property from damage, is engaged in performance of his duty is a question of law, and the jury should be guided by an appropriate instruction on this issue.

The instruction as to an assault in terms of superseded CALJIC 9.00 was erroneous in its requirement of a specific intent (*People* v. *Rocha* (1971) 3 Cal.3d 893, 898 [92 Cal.Rptr. 172, 479 P.2d 372], handed down after the trial of the instant case), but it was error favorable to defendant.

However, the trial judge never instructed the jury that either a simple battery or a simple assault, either of which would be a misdemeanor only, was also a lesser and necessarily included offense. He should have so instructed *sua sponte*. (See *People* v. *Hood, supra,* 1 Cal.3d 444, 449; *People* v. *Cooper* (1968) 268 Cal.App.2d 34 [73 Cal.Rptr. 608].)

At the time of *voir dire* examination of the prospective jurors, three persons indicated that they had not previously served as jurors in a criminal case. The trial judge then stated: "[F]or the benefit of the three persons, I will state that since this is a criminal case the burden or [*sic*] proof rests upon the People to establish guilt of the defendant beyond a reasonable doubt and also that in a criminal case the defendant is presumed to be innocent of the charges against him until proved guilty by the People by evidence beyond a reasonable doubt. [Par.] I will give you Instructions at the appropriate time as to what constitutes a reasonable doubt. Suffice it to say at this time we use the words moral certainty, a conviction to a moral certainty. The People do not have to prove their case in all events to an absolute certainty." However, the instruction as to reasonable doubt and presumption of innocence was apparently inadvertently omitted at the time the jury was formally instructed. Penal Code section 1093, subdivision 6, permits a judge in a criminal case to instruct the jury *sua sponte*

"[a]t the beginning of the trial or from time to time during the trial" on rules of law he deems necessary for their guidance in hearing of the case and probably this inadvertent omission would not alone constitute reversible error, but the failure to instruct after a representation that he would instruct on reasonable doubt at an appropriate time is an additional factor to be considered in assessing the overall compliance with recognized due process in the trial of a criminal case.

In fairness to the trial judge, we note that much of the law in this area was definitively settled by our Supreme Court subsequent to the trial of this case and that the issue of whether Officer Bentley "was engaged in the performance of his duties" is being decided upon this appeal. We also observe that the real factual dispute for the trier of fact to resolve in this case was the identity of the person who committed the acts of battery and/or assault attributed to defendant, and the corollary issue of whether defendant was able to ambulate without his crutches when enraged. Nevertheless we feel constrained to reverse the judgment for it has been held that errors of this nature deprive a defendant of his constitutional right to have the jury determine every material issue presented by the evidence. (*People* v. *Hood, supra,* 1 Cal.3d 444, 450, and cases cited; see, also, Traynor, The Riddle of Harmless Error (1970) pp. 73-74.)

*Disposition*

The judgment is reversed.

Kaus, P. J., concurred.