[Crim. No. 20258. July 31, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
SANDRA COREY, Defendant and Appellant.

## COUNSEL

Paul N. Halvonik, State Public Defender, Gary S. Goodpaster, Chief Assistant State Public Defender, David M. Blackman and Stephen Berlin, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel E. Carey and Robert D. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MANUEL, J.**—Defendant Sandra Corey appeals from an order granting probation entered after a jury convicted her of committing a battery on a peace officer in violation of Penal Code sections 242 and 243. Defendant was placed on three years' probation, and as a condition of probation was

ordered to spend sixty days in the county jail. Execution of the order of imprisonment was stayed pending the outcome of the present appeal.

The battery committed by defendant occurred in December 1976 at a public dance sponsored by a private association and held at Cal Expo in Sacramento. Howard Anderson, a police officer of the City of Sacramento was employed during his off-duty hours to provide security for the dance. He was paid for his services by the private association, but wore his regular police uniform and was fully armed. Anderson was assigned to the balcony area of the building with orders from the association to keep out people who either had no tickets or who had left the dance and sought readmission after midnight.

Shortly after midnight, defendant and her sister asked Anderson to let them back into the dance, but Anderson refused their request in accordance with the instructions from his employer. Thereafter, when Anderson opened the door to permit several couples to leave the dance, defendant and her sister rushed past him into the building. Anderson grabbed defendant by the arm intending to walk her back outside. Defendant began to yell, and when Anderson momentarily looked away, defendant struck him in the head with the shoes she was carrying. Defendant attempted to strike Anderson in the head again, but he was able to deflect this blow with his hand, sustaining a broken finger as a result. Anderson then sprayed chemical mace on defendant, who struggled free from his grip and ran into the crowd. Shortly thereafter, Anderson overtook defendant on a ramp leading away from the dance hall, and placed her under arrest for assaulting him. She physically resisted and began kicking at him, and Anderson again sprayed her with mace. Defendant was then handcuffed and was eventually taken to police headquarters.

Defendant's primary contention on appeal is that since, as a matter of law, an off-duty police officer who is acting within the scope of his employment as a private security guard is not a peace officer engaged in the performance of his duties within the meaning of Penal Code section 243, the evidence is insufficient to support her conviction of battery on a peace officer. We have concluded that this contention is meritorious and that the order should be reversed.

Penal Code section 243 provides in relevant part that a battery "[w]hen it is committed against the person of a peace officer . . . and the person committing the offense knows or reasonably should know that such

victim is a peace officer . . . engaged in the performance of his duties, and such peace officer . . . is engaged in the performance of his duties . . . [is punishable] by imprisonment in the county jail not exceeding one year or by imprisonment in the state prison . . . . As used in this section 'peace officer' refers to any person designated as a peace officer by Section 830.1. . . ."

Penal Code section 830.1 provides in relevant part that "Any sheriff, undersheriff or deputy sheriff, regularly employed and paid as such, of a county, *any policeman of a city,* any policeman of a district authorized by statute to maintain a police department, any marshall or deputy marshall of a municipal court, or any constable or deputy constable, regularly employed and paid as such, of a judicial district . . . is a peace officer. . . ." (Italics added.)

Defendant contends that the phrase "regularly employed and paid as such" modifies the phrase "any policeman of a city," thereby precluding from this category off-duty municipal police officers when they perform services for private compensation outside the scope of their regular police employment. █ It is a general rule of statutory construction, however, that " 'modifying phrases are to be applied to the words immediately preceding them and are not to be construed as extending to more remote phrases.' (*City of Santa Barbara* v. *Maher,* 25 Cal.App.2d 325, 327 [77 P.2d 306], and cases there cited.)" (*Watkins* v. *Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 399 [6 Cal.Rptr. 191].) An exception to this rule provides that " '[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be applicable to all.' " (*Wholesale T. Dealers* v. *National etc. Co.* (1938) 11 Cal.2d 634, 659 [82 P.2d 3, 118 A.L.R. 486].) The exception does not, however, appear applicable here. City police officers are normally "regularly employed and paid as such," whereas deputy sheriffs and deputy constables may serve in that capacity, particularly in small counties, on an irregular basis. Thus, the clause "regularly employed and paid as such," is not applicable as much to the phrase "city policeman," as it is to the phrases that the clause immediately follows. █ We therefore conclude that at the time of the battery, Howard Anderson, a city police officer, was technically a peace officer as defined by Penal Code section 830.1. In order for such a peace officer to come within the ambit of Penal Code section 243, however, that peace officer must be actually engaged in the performance of his duties (*People* v. *Soto* (1969) 276 Cal.App.2d 81, 85 [53 Cal.Rptr. 832]), and must actually or

reasonably be known by the accused to be acting in that capacity. We must therefore determine whether the Legislature intended to include peace officers who are acting within the scope of their private employment as security guards within the meaning of peace officers who are engaged in the performance of their duties, as contemplated in Penal Code section 243.

■ Under general rules of statutory construction, we may, in construing a statute, consider other statutes that might bear on the meaning of the statute at issue. (See *People* v. *Ruster* (1976) 16 Cal.3d 690, 696 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].) In this regard, we consider the Private Investigator and Adjuster Act (PIAA) (Bus. & Prof. Code, § 7500 et seq.) to be particularly germane. This comprehensive act regulates the occupations of private investigators and private patrol operators and similar pursuits. A private patrol operator is defined in section 7521 of the act as "a person who, for any consideration whatsoever: Agrees to furnish, or furnishes, a watchman, guard, patrolman, or other person *to protect persons or property* or to prevent the theft, unlawful taking, loss, embezzlement, misappropriation, or concealment of any goods, wares, merchandise, money, bonds, stocks, notes, documents, papers, or property of any kind; *or performs the service of such* watchman, guard, patrolman, or other person, for any kind of said purposes." (Italics added.) Private patrol operators must be licensed (§ 7520), and they and their employees must comply with the various regulatory provisions of the PIAA. These regulatory provisions reflect an intent of the Legislature in enacting PIAA to eliminate to the extent possible public confusion between private patrol operators and local law enforcement officers. This intent is clearly demonstrated by the provision in section 7538, subdivision (e), which states in relevant part that "No licensee . . . or employee of a licensee, shall use a title, *or wear a uniform,* or use an insignia, or use an identification, *or make any statement with the intent to give an impression that he is connected in any way with . . . any political subdivision of a state government."* (Italics added.) (See also section 7514.2 which authorizes cities and counties to regulate the uniforms worn by uniformed employees of private patrol operators and the vehicles used by them so as to make them clearly distinguishable from those uniforms worn by and the vehicles used by, *local regular law enforcement officers.)*

It is apparent from section 7538, subdivision (e), that if a peace officer is subject to regulation under PIAA when he is employed during his off-duty hours as a security guard, he would be prohibited, when acting

within the scope of this private employment, from wearing his police uniform or from indicating in any way that he is a police officer. Thus, although an off-duty police officer may perform various acts in his private capacity as a security guard which may coincide with his duties as a peace officer, it is clear that in so doing, provided that he is subject to PIAA, he cannot give the appearance of being a police officer. Therefore, since members of the public could not reasonably know, unless he violated that act, that he was actually a peace officer and acting within his official capacity, it would be absurd to say that he was engaged in the performance of his duties as such for the purposes of Penal Code section 243. ■ We must therefore determine whether the Legislature intended to make off-duty peace officers employed as private security guards or patrolmen subject to the regulations of PIAA.

The only exemptions from regulation under PIAA are enumerated in Business and Professions Code section 7522. Subdivision (b) as amended in 1973 exempts "[a]n officer or employee . . . of this state or a political subdivision thereof, *while such officer or employee is engaged in the performance of his official duties,* including uniformed peace officers employed part-time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided that such part-time employment does not exceed 50 hours in any calendar month." (Italics added.) The legislative history of section 7522, subdivision (b) clearly indicates that this statutory exemption is not intended to apply to peace officers, such as Officer Anderson, who are engaged in part-time private patrol employment. An express provision exempting such peace officers from the operation of PIAA as long as their private patrol employment did not exceed 50 hours per calendar month had formerly been included in section 7522 (Stats. 1967, ch. 1377, p. 3227). However, section 7522 was amended by chapter 695 of the Statutes of 1973. This chapter emanated from Assembly Bill No. 1348 which was introduced on April 23, 1973. The bill originally provided, inter alia, for the deletion of the above provision exempting peace officers in part-time private patrol employment, and for the addition of a new section which stated that "It is the intent of the Legislature that the amendments made in section 7522 of the Business and Professions Code by this act shall require peace officers when they are employed in part-time private patrol employment to be licensed under the Private Investigators and Adjusters Act." The bill was amended by the Assembly on June 14, 1973, and the exception for peace officers engaged in part-time private patrol employment was re-added. Consistent with this amendment, the provision specifying the legislative intent to exclude such peace officers was deleted.

The bill as amended was then sent to the Senate where it was amended on August 30, 1973. By this amendment, the exception for peace officers engaged in part-time private patrol employment was again deleted, and the bill as amended by the Senate was subsequently enacted into law. Although the Legislature in amending subdivision (b) in this regard did not include the provision in the original bill which expressly stated the intent of the Legislature, it is clear, even without such an express statement of intent, that the Legislature intended, by deleting the exception for peace officers engaged in part-time private patrol employment (which exception had formerly been provided by law), that as of 1973 such peace officers are subject to the regulatory provisions of PIAA.[1] Furthermore, as we observed earlier, inasmuch as peace officers acting as private security guards or patrolmen are authorized to perform services which may involve protection of persons and property (see Bus. & Prof. Code, § 7521), as well as effecting the arrest of those who commit such crimes in their presence (Pen. Code, §§ 834, 836, 837), it is apparent that in so doing, they are in most cases concurrently performing the duties required of all peace officers, whether on or off duty. Nevertheless, the Legislature by amending section 7522 in 1973, has indicated a policy whereby the fact of private employment operates to prevent a peace officer from acting in what would otherwise be his official capacity.

These statutory provisions "express clearly the legislative policy that private patrolmen shall not create the impression that they are acting under governmental authority" (48 Ops.Cal.Atty.Gen. 80, 83 (1966).) More importantly, the Legislature has specifically made illegal the receipt by any public employee or officer of any "emolument, gratuity or reward, or promise thereof . . . for doing an official act." (Pen. Code, § 70.) Thus, the law and policy of this state forbid the policeman here involved from receiving pay from the sponsors of the event for performing his official duties.[2] Thus, if what Officer Anderson was doing was not in violation of

---

[1]We do not think that the Legislature intended to treat peace officers who are engaged in private patrol work on a regular part-time basis for only one employer any differently than peace officers who are engaged in private patrol work on a casual basis. Thus, although subdivision (a) of section 7522 does provide an exception for persons regularly and exclusively employed by one employer, provided that they do not carry or use a deadly weapon in the performance of their duties, we do not think the fact that certain peace officers may qualify under this section would permit such officers, when acting within the scope of their private employment, to wear police uniforms or give the appearance that they are peace officers.

[2]A similar intent of the Legislature is evidenced by Government Code section 50922, subdivision (a), which denies extension of any benefits to a peace officer who at the time of injury, death or disability is acting for compensation from one other than his primary governmental employer. (See also Lab. Code, § 3600.3, subd. (d).)

law (Pen. Code, § 70), it must be because on his off-duty hours he was not performing his official duties but rather performing only a private duty pursuant to contract. If he were engaged in such contractual activity, he was not engaged in the performance of his official duty, so as to bring the felony provisions of Penal Code section 243 into operation. There is no reason to impute to the Legislature any intent to furnish to one acting as a private patrolman any special protection just because he is also in the employ of a city as a policeman.

■ Given this legislative intent, we conclude that Penal Code section 243 which serves to protect peace officers engaged in the performance of their duties, by providing enhanced punishment for those committing batteries on such peace officers, does not apply to peace officers who are assaulted within the course and scope of their private employment as security guards. We do not suggest that a peace officer's official duties necessarily cease at the end of his normal working hours (Cf. *People* v. *Derby* (1960) 177 Cal.App.2d 626, 630-631 [2 Cal.Rptr. 401]), where there are no private contractual duties of the nature involved herein. We therefore disapprove *People* v. *Hooker* (1967) 254 Cal.App.2d 878 [62 Cal.Rptr. 675] and *People* v. *Townsend* (1971) 20 Cal.App.3d 688 [98 Cal.Rptr. 25], to the extent they are inconsistent with this opinion. We further conclude that since it is undisputed that Officer Anderson was employed as a part-time private security guard when the incident involving defendant occurred, he was subject to the regulations of PIAA and therefore could not properly have been acting in his official capacity when, during the scope of that employment, he was battered by her. We therefore hold the evidence insufficient to support defendant's conviction of battery on a peace officer.

We find no error, however, with regard to defendant's conviction of simple battery and as the evidence was sufficient to support a verdict as to that lesser included offense, we modify the verdict by reducing the offense to simple battery.

The order granting probation is reversed and the case is remanded to the trial court for disposition in light of this modification.

Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., and Newman, J., concurred.

**CLARK, J.,** Concurring and Dissenting.—I dissent from that portion of the majority opinion concluding defendant is not guilty of violating Penal Code section 243.

Section 243 prohibits battery "against the person of a peace officer" when "engaged in the performance of his duties." We must therefore determine what duty rested with Officer Anderson upon observing defendant's conduct. The majority recognize an off-duty municipal police officer possesses a continuing status as a peace officer. (Pen. Code, § 830.1.) However, they argue he is not "engaged in the performance of his duties" when, in full uniform, he is privately employed to perform essentially the same services he would have performed had he been assigned by the municipality to keep peace at the public dance in question. Is a wrongdoer to escape criminal responsibility for attacking a municipal police officer merely because—unknown to her—the officer is paid for his peace-keeping duties by a source other than the municipality? The majority answer with a strained construction of Penal Code section 243.

The majority construction is made to depend on legislative intent borrowed from another code—the Private Investigator and Adjuster Act. (Bus. & Prof. Code, § 7500 et seq.) Security personnel subject to the act cannot represent themselves as peace officers and, the majority argue, if an off-duty peace officer engaged to perform private security services is subject to the act, he too cannot represent himself as a peace officer—even though he be one in fact. The majority conclude that such an officer is subject to the act and "it would be absurd to say that he was engaged in the performance of his duties [as a peace officer] for the purposes of Penal Code section 243." (*Ante,* p. 744.)

Even if the Business and Professions Code is arguably applicable to Officer Anderson's securing the passageway, the majority's rationale fails to consider the true capacity in which the officer was acting when he attempted to arrest, and was attacked by, defendant. A peace officer has a continuing responsibility to keep the peace at all hours, whether or not officially on duty. "[B]ecause of the nature of their employment public officers are under a special duty at all times to use their best efforts to apprehend criminals." (*People* v. *Hooker* (1967) 254 Cal.App.2d 878, 883 [62 Cal.Rptr. 675], disapproved on other grounds in *People* v. *Curtis* (1969) 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33], 356; see also *People* v. *Townsend* (1971) 20 Cal.App.3d 688, 694-695 [98 Cal.Rptr. 25].) It does not follow that because an off-duty peace officer is performing duties as a private security guard he cannot use all reasonable means to effect an

arrest when he observes the commission of a criminal act. In fact, he is charged with effecting an arrest and his failure to do so would expose him to a charge of dereliction of his duties as a peace officer. Thus when making such arrest he is clearly "engaged in the performance of his duties" within the meaning of Penal Code section 243. (See *People* v. *Townsend, supra,* 20 Cal.App.3d 688, 694-695; *People* v. *Hooker, supra,* 254 Cal.App.2d 878, 883.) To hold otherwise, as do the majority, effectively eliminates a substantial and valuable source of police protection. In its absence, it would appear that either the municipality itself must provide police protection by *on-duty* officers or allow criminal conduct to prevail at public dances sponsored by private associations.

In the instant case Officer Anderson observed the commission of criminal conduct by defendant—she committed a criminal trespass (Pen. Code, § 602) and disturbed the peace (Pen. Code, § 415) when she forced her way through the passageway guarded by Anderson. Moreover, even the majority concede that when Officer Anderson sought to remove defendant from the premises she committed at least a simple battery. (Pen. Code, § 242.) It is thus clear that at this point Anderson possessed both power and duty to arrest defendant for one or more of the violations committed in his presence. He summoned help, abandoned the security duties assigned by the private association, and left to apprehend defendant outside the building. While acting *only* in his capacity as a peace officer attempting to effect a valid arrest, Anderson was again attacked by defendant. By no reasonable rationale can it be concluded this attack did not constitute a violation of Penal Code section 243. The battery was "committed against the person of a peace officer," defendant knew "or reasonably should [have known] that such victim [was] a peace officer . . . engaged in the performance of his duties," and as demonstrated, Anderson was then "engaged in the performance of his duties . . . ." (Pen. Code, § 243.)

The judgment should be affirmed in its entirety.

Respondent's petition for a rehearing was denied August 30, 1978.