STATE of Missouri, Respondent,

v.

George W. PALMS, Appellant.

No. WD 30242.

Missouri Court of Appeals,
Western District.

Dec. 3, 1979.

Motion for Rehearing and/or Transfer
Denied Dec. 31, 1979.

Application to Transfer Denied
Feb. 11, 1980.

Clifford A. Cohen, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

PRITCHARD, Judge.

Appellant was by the verdict of a jury convicted of the commission of the crime under § 557.215, RSMo 1969, of willfully wounding a police officer who was allegedly "actively engaged in the performance of duties imposed upon him by law." Appellant was sentenced to three years imprisonment in the Division of Corrections, but the court granted him probation for a five year period. The question is whether the person assaulted and wounded comes within the purview of this statute, he being a reserve officer of the Kansas City Police Department, not assigned to active duty, but who was wearing his official uniform with service revolver and holster while being privately employed as a security guard by the Nelson Art Gallery in Kansas City. The matter is one of first impression in this state.

Robert Thomas Harrison was the reserve Kansas City police officer on October 2, 1977, he having received his commission in 1974. The training for that position was almost identical to that received by a regular officer. At about 5:00 p. m., after the Philharmonic had just finished a performance, Harrison was stationed in the main hall inside the entrance to the Nelson Art Gallery watching people leave. At that time he noticed appellant over by the donation box, and as he went there he saw that appellant had the box tipped up on end and was removing the screws from its bottom. There was a paring knife lying on the table. Harrison asked appellant what he was doing, and he answered that he had put three dollars in the donation box and changed his mind and wanted his money back. Harrison advised him to see a Mr. Songer about it the next day, and started to push the box down to its original position, at the same time sliding the knife behind the donation box. At that time appellant reached for Harrison's service revolver with both hands, and tore it from the holster. After it came free, Harrison grabbed the revolver holding it to keep it from spinning by its hammer being pulled back. In the scuffle, the two fell to the floor at which time Harrison recovered possession of the revolver. During the struggle, Harrison was bitten on his left forearm by appellant, the wound puncturing the skin and drawing blood. Other employees assisted in subduing appellant, who was then handcuffed by Harrison and escorted from the gallery to a passing police vehicle.

Harrison obtained his job as security guard by asking another officer who previously had the job and who had transferred to the regular force if he could keep it until the other officer worked his schedule around so he could have back the job. Harrison was paid by the gallery. He went through a special procedure to accept the job by use of a department form for application for off-duty employment, whether in uniform or plainclothes, hours worked, which application was approved by the captain of the reserve division. Harrison received no pay for being a reserve officer, and on the day in question he was off duty in an official capacity as a reserve police officer.

There are two lines of authorities from other jurisdictions concerning the protection granted to off-duty police officers under statutes similar to § 557.215, supra, when they are privately employed as security guards. Although they are informative as to philosophies presented, they are not particularly helpful because they involve the private employment of regular police officers in an off-duty capacity, while here the victim was a reserve police officer not regularly assigned to any official duty by the police department. Appellant cites *People v. Corey*, 21 Cal.3d 738, 147 Cal.Rptr. 639, 581 P.2d 644 (1978), in which the victim officer was employed during off-duty hours to provide security for a dance. He was privately paid for his services but wore his regular police uniform and was fully armed. Defendant, in trying to re-enter the dance,

struck the officer on the head with shoes she was carrying, and again tried to strike him on the head and in deflecting the blow with his hand, he suffered a broken finger. The officer arrested her for assaulting him. The California statute in effect provided that a battery committed by one who knows or reasonably should know that the victim is a peace officer engaged in the performance of his duties, and the officer "is engaged in the performance of his duties . . [is punishable] . . ." Another statute defined "police officer" as any sheriff, undersheriff, or deputy sheriff, regularly employed and paid as such, of a county, any policeman of a city (etc.) regularly employed and paid as such. The court held that the officer was not engaged in the performance of his duties, and that the statute, which serves to protect police officers, did not apply to peace officers who are assaulted within the scope of their private employment as security guards. The court noted, 147 Cal.Rptr. page 644, 581 P.2d page 649[9–11], "We do not suggest that a police officer's official duties necessarily cease at the end of his normal working hours [cf. *People v. Derby*, (1960) 177 Cal.App.2d 626, 630–631, 2 Cal.Rptr. 401], where there are no private contractual duties of the nature involved herein. (Disapproving previous cases.).'' The court reduced the verdict to the offense of simple battery as a lesser included offense.

In *Stewart v. State*, 527 P.2d 22 (Okl.Cr. 1974), an off-duty patrolman was working as a security guard in an apartment complex when he observed defendant and another knocking at an apartment door and window, the officer knowing that the apartment was unoccupied, and he asked the men for identification which was refused. The officer was not wearing his official uniform and was not armed. He followed the men to their pickup and there identified himself as a police officer and displayed his badge. The defendant struck the officer, knocking him to the ground. The court reversed the conviction noting that there was no evidence that the officer was in the performance of his duties, and said, page 24, "We believe that when an off-duty police officer

accepts private employment and is receiving compensation from his private employer he changes hats from a police officer to a private citizen when engaged in this employment and he is .therefore representing his private employer's interest and not the public's interest. In a proper civil case, if the off-duty police officer, in the performance of his private employment, causes personal injury or property damages, his employer would be liable civilly as well as himself and not the city. * * * We therefore hold that as a matter of law when an off-duty police officer accepts private employment and when engaged in this private employment he becomes a private citizen. * * * [D]efendant, if guilty of any crime, is guilty of simple assault and battery." Note also the case of *Brooks v. State*, 561 P.2d 137 (Okl.Cr.1977), where the officer was not acting in private employment when he arrested defendants while off duty and not in uniform, the court holding that the officer was acting for the benefit of the general public with the aim of maintaining peace and order.

Respondent cites *State v. Coleman*, 224 Kan. 447, 580 P.2d 1329 (1978), where the court affirmed a conviction of aggravated assault on law enforcement officer who commonly worked full time as such for the City of Wichita. He was employed during off hours dressed in faded blue jeans, a T-shirt, a jeans jacket and brown boots. He had his badge, police identification card, a revolver and a set of handcuffs. He observed defendant shoplifting and followed him in hot pursuit outside the store where he informed defendant he was a police officer and that he was under arrest, and it was necessary for him to come inside, which defendant refused. Defendant went to his automobile, secured a gun, and during an ensuing struggle, shot the officer in the hand. Also cited is *Wood v. State*, 486 S.W.2d 771 (Tex.Cr.App.1972), where there was testimony that the type of private work, paid for by a private corporation, was sanctioned and administratively controlled by the Dallas Police Department, the court noting, page 774[2], the Texas law "that a

police officer's 'off-duty' status is not a limitation upon the discharge of police authority in the presence of criminal activity." See also respondent's further cited cases. *Monroe v. State*, 465 S.W.2d 757 (Tex.Cr. App.1971); and *Thompson v. State*, 426 S.W.2d 242 (Tex.Cr.App.1968).

§ 84.540, RSMo 1969, provides, "Upon recommendation of the chief of police, the board may authorize and provide for the organization of a police reserve force composed of residents of the city who qualify under the provisions of subsection 1 of section 84.570. Such reserve force shall be under the command of the chief of police and shall be provided training, equipment, uniforms, and arms as the chief shall direct with the approval of the board; *and when assigned to active duty the members of the reserve force shall possess all of the powers of regular police officers and shall be subject to all laws and regulations applicable to police officers*; \* \* \*." (Emphasis added.) There is no evidence that Harrison, the victim, was assigned to active duty by any police authority. He was not, therefore, in any sense of the term, a regular police officer. He was in the status of a private citizen employed in a private, not public, capacity by the Nelson Art Gallery. He was not clothed with any protection of § 557.215, supra, as a regular police officer. Thus appellant could not be found guilty of a battery upon a police officer engaged in the performance of his duties as a matter of law. The submission to the jury of that offense was in error, and that conviction must be set aside.

The judgment is reversed and appellant is ordered discharged.

All concur.