Filed 5/1/14  P. v. Williams CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEPHEN LAMONT WILLIAMS,<br><br>    Defendant and Appellant. | B243120<br><br>(Los Angeles County<br>Super. Ct. No. TA122155) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Allen J. Webster, Judge.  Affirmed.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Stephen Williams guilty of one count of second degree burglary, two counts of assault with a deadly weapon and found true one great bodily injury enhancement. Williams attacks the assault convictions and the sufficiency of the evidence to support the great bodily injury enhancement. We affirm the judgment.

## FACTS AND PROCEEDINGS BELOW

In the still-dark hours of the morning on February 21, 2012, Viridiana Lopez walked out of her house intending to go to work. She noticed that the dome light was on inside her brother Raul's truck and saw Williams sitting in the driver's seat. She recognized Williams from having seen him in the neighborhood. Viridiana screamed, "Raul!" Williams pulled his hoodie over his head, got out of the truck and rode off on a bicycle. Hearing Viridiana's screams, her husband Marvin and her brother Raul ran out of the house. Marvin got a quick look at the person who had been in the truck before he disappeared on the bicycle. It was too dark to see the person's face but he could tell it was a male. No one called the police.

Ten or fifteen minutes later Viridiana drove to a gas station to buy coffee and Marvin and Raul followed her in Raul's truck. When the group pulled into the gas station Viridiana saw Williams walking down the sidewalk. She pointed to him and told Raul, "that's him." Marvin and Raul, in Raul's truck, drove along side Williams who began to run as soon as he saw them. As he ran, Williams spontaneously shouted: "I didn't get inside your truck."

Marvin and Raul got out of the truck and pursued Williams on foot. When Williams tripped and fell Raul "grabbed" him and Marvin came to assist. Together Marvin and Raul tried to hold Williams down. Marvin pressed his knee into Williams' stomach and he and Raul tried to seize Williams hands.

Viridiana arrived on the scene while the struggle was underway and told Raul and Marvin that Williams was the man she saw in the truck that morning. Raul told Viridiana to call the police.

While Viridiana was calling the police, Williams escaped the grasp of Raul and Marvin and started swinging at them and Viridiana with screwdrivers he held in each hand. Williams hit Viridiana with his fist and stabbed Marvin with a screwdriver on the right side of his face. At some point in the scuffle Raul suffered a lacerated lip. Raul, Marvin and Viridiana managed to wrestle Williams to the ground. Viridiana stood behind Williams holding his hoodie with one hand and using her other hand to call the police on her cellphone. She and the two men were able to detain Williams until the police arrived.

Williams testified in his own defense. He stated that he was walking from his home to a donut shop when he was "'jumped by some fuck'in Mexicans.'" A truck made a quick U-turn and stopped near him. Two men (later identified as Raul and Marvin) got out. Raul said: "Come here mother fucker." Williams started to run because he thought the men might be members of a rival gang. Raul and Marvin chased Williams down the street. When they caught up with him Raul accused him of "fuck'in with my truck." Williams responded: "No man. It wasn't me." Raul and Marvin began "kicking" and "stomping" Williams. Later, Williams said, Viridiana joined Marvin and Raul and the three of them were "standing over me beating me, kicking me and hitting me." Williams testified that when he heard Viridiana say she was going to call the police: "I started fighting back . . . because I was on the run from parole." He also testified that he took a screwdriver and an ice pick with him everywhere he went because "I'm in a war zone, you know."

The jury found Williams guilty of one count of second degree burglary and two counts of assault with a deadly weapon. It found Williams personally inflicted great bodily injury upon Marvin.

3

**DISCUSSION**

**I.      WILLIAMS FORFEITED ANY COMPLAINT ABOUT ERRORS IN THE INSTRUCTIONS ON SELF-DEFENSE BY FAILING TO RAISE THEM IN THE TRIAL COURT.**

At trial Williams claimed that he was not the person in Raul's truck, did not know why Raul and Marvin jumped him and that he fought them when they attacked him because he thought they were rival gang members.

The court instructed the jury on the right of self-defense in general (CALCRIM No. 3470)[1] , the right to self-defense of one who engages in mutual

---

[1]      CALCRIM No. 3470 provides:  "Self-defense is a defense to Assault With A Deadly Weapon.  The defendant is not guilty of those crimes if he used force against the other person in lawful self-defense.  The defendant acted in lawful self-defense if:

1.  The defendant reasonably believed that he was in imminent danger of suffering bodily injury;

2.  The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;

AND

3.  The defendant used no more force than was reasonably necessary to defend against that danger.

Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be.  The defendant must have believed there was imminent danger of bodily injury to himself.  Defendant's belief must have been reasonable and he must have acted because of that belief.  The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation.  If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense.

When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

A defendant is not required to retreat.  He or she is entitled to stand his or her ground and defend himself or herself and, if reasonably necessary, to pursue an assailant until the danger of bodily injury has passed.  This is so even if safety could have been achieved by retreating.

The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense.  If the People have not met this burden, you must find the defendant not guilty."

4

combat (CALCRIM No. 3471) that the right of self-defense does not apply if the defendant provokes a fight with the intent to create an excuse to use force (CALCRIM No. 3472) and that the right to use force in self-defense expires when the attacker withdraws or is no longer capable of inflicting injury (CALCRIM No. 3474).

On appeal Williams contends that those instructions were insufficient. He argues that the court had a sua sponte duty to instruct the jury that a person performing a citizen's arrest may use only that amount of restraint as is reasonable to detain the arrestee until law enforcement officers arrive[2] and that the arrestee is privileged to "use reasonable force to defend life and limb against excessive force[.]" (*People v. Curtis* (1969) 70 Cal.2d 347, 357; 4 Witkin, Cal. Criminal Law (4th ed. 2012) Pretrial Procedure § 13, p. 248.)

Williams forfeited this argument by not requesting the customized instruction he now claims should have been given.

As a general rule courts will not consider alleged errors that could have been cured in the trial court had they been presented there. (*People v. Saunders* (1993) 5 Cal.4th 580, 589-590.) In some instances, an appellant may seek review of an instruction "even though no objection was made thereto in the lower court" if the "substantial rights of the defendant were affected thereby." (Pen. Code, § 1259.) But this exception to the usual rule of forfeiture only applies to an instruction "given, refused or modified." (*Ibid*.)

We agree with Williams that the trial court must instruct sua sponte on the general principles of law relevant to the issues raised by the evidence. (*People v. Flannel* (1979) 25 Cal.3d 668, 681.) This duty is met where the instructions correctly state the applicable law. The court does not have a duty create on its own additional or clarifying instructions. As our high court explained in *People v. Lang* (1989) 49 Cal.3d 991, 1024, "A party may not complain on appeal that an instruction correct in law and responsive to

---

[2]     Penal Code section 835 states in relevant part: "The person arrested may be subjected to such restraint as is reasonable for his arrest and detention."

5

the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." Here the court instructed the jury on the general right to use force in self-defense. If the jurors had believed Williams' contention that Raul, Marvin and Viridiana attacked him for no valid reason and that he fought back only to protect his "life and limb" against imminent danger of bodily injury and that he used no more force than was reasonably necessary to defend against that danger the jurors would have acquitted him of the burglary and the assault charges. Instructions on the privilege to use force in resisting detention or arrest would have been surplusage.

Williams argues, however, that instructions on citizens' arrests and resisting arrest were necessary because the prosecutor introduced that issue into the case in her closing argument to the jury. The prosecutor told the jury: "[I]f you believe the testimony of the witnesses, [Williams] doesn't have a right to self-defense. He does not. They were trying to detain a fleeing suspect until the police came. They have a right to do that. There is no law in those instructions telling you that they acted unlawfully unless you believe [Williams] is the wrong person who had no idea what was going on and really felt that he was being chased by gang members." Williams was not prejudiced by this argument because it conceded the legal basis of his defense: he was not guilty of assault if he reasonably believed that he was being pursued and attacked by gang members. In any case, defense counsel did not object to the prosecutor's argument and so the issue cannot be addressed in this appeal. (*People v. Harris* (2013) 57 Cal.4th 804, 852.)

Finally, Williams maintains that his trial counsel provided ineffective assistance in failing to request an instruction on the privilege to use self-defense in resisting an unreasonable detention and failing to object to the prosecutor's argument that a fleeing felon has no right to self-defense. We disagree. An instruction on the privilege to resist excessive force in a detention would only make sense if Williams was willing to concede there was evidence that would allow the jury to find he burglarized Juan's truck. Otherwise, as we discussed above, the instruction would add nothing to the general instruction on self-defense that the court gave. Defense counsel could reasonably

6

conclude that as a tactical matter it would be better to stick with the SODDI[3] defense rather than present the jury with two conflicting defenses.

## II. SUFFICIENT EVIDENCE SUPPORTED THE ENHANCEMENT FOR GREAT BODILY INJURY TO MARVIN.

Penal Code section 12022.7, subdivision (f) defines "great bodily injury" as "a significant or substantial physical injury." This standard is commonly established by "evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." (*People v. Cross* (2008) 45 Cal.4th 58, 66.) The jury, instructed in the language of Penal Code section 12022.7, subdivision (f), found that Williams inflicted great bodily injury on Marvin based on the following evidence.

In his attempt to detain Williams, Marvin received a laceration on the right side of his face. An officer who responded to the scene testified that the cut was a quarter inch long. Paramedics applied a Band-Aid to the cut and Marvin went to work. Later that day, however, blood soaked through the Band-Aid and after work Marvin went to the hospital where a doctor cleaned the wound and applied six stitches. When Marvin testified at trial four months after the incident he exhibited a scar which the prosecutor estimated as between two-thirds and three-fourths inch in length.

Williams argues on appeal that a quarter inch cut that required six stitches does not meet the standard of a "significant or substantial" injury as a matter of law. The evidence showed, however, that while the cut appeared superficial at first it continued to bleed throughout the day and had to be sutured at a hospital suggesting that the wound was a deep puncture, not a shallow

---

[3] In the jargon of criminal law attorneys the acronym SODDI stands for "Some Other Dude Did It." (Uleman, Conditional Relevance and the Admission of Party Admissions (2008) 36 Sw.U. L.Rev. 657, 668.)

scratch.  Moreover, the cut left a scar between two-thirds and three-fourths of an inch on the side of Marvin's face.

Here, the court instructed the jury on what constitutes a "great" bodily injury and the jury, applying contemporary community norms, found that Marvin's injury met that standard.  We cannot say as a matter of law that the jury erred.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, Acting P. J.

We concur:

CHANEY, J.

JOHNSON, J.

8