Filed 1/8/15  In re Juan A. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re JUAN A., a Person Coming Under the Juvenile Court Law. | B252829 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JUAN A.,<br><br>        Defendant and Appellant. | (Los Angeles County<br>Super. Ct. No. GJ29983) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Nancy S. Pogue and Robert Leventer, Commissioners.  Affirmed.

        Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The juvenile court found appellant Juan A. committed the crime of using force or violence to resist an executive officer in the performance of his duty.  (Pen. Code, § 69.)  We affirm.

## FACTS

At around 3:30 in the afternoon, Los Angeles County Deputy Probation Officer Thomas Wilcox was supervising a group of four youths in a restroom at Challenger, a Probation Department camp in Lancaster, when Juan left his bed without permission and walked into the restroom without permission.  Deputy Wilcox told Juan to return to his bed.  Juan did not comply.  Deputy Wilcox told Juan a second time to return to bed.  Juan again did not comply.  Instead, Juan walked over to and faced a toilet, and either prepared to urinate or did begin to urinate.  Deputy Wilcox again ordered Juan to leave the bathroom.  At about this same time, Deputy Wilcox "gave [Juan] a left touch prompt on the side" to get him to leave.  Juan shrugged his shoulders, turned around, and started to walk out of the bathroom.  Deputy Wilcox began walking next to Juan and "didn't think there was a problem," but then Juan abruptly turned and punched the deputy on the side of his face with a closed fist.  A struggle ensued and continued until Deputy Wilcox subdued Juan with pepper spray.[1]

---

[1]     The facts are reviewed in the light most favorable to the lower court's judgment. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.)  Deputy Wilcox testified he could not see whether Juan started to urinate, as the deputy was seeing Juan's back.  Deputy Wilcox did not hear Juan urinating.  Another ward did hear Juan start to urinate.  Juan testified that he was "peeing in the toilet" when Deputy Wilcox pulled him away from the toilet by the back collar on his shirt.  Juan testified he threw a punch while he was being pulled away from the toilet.  We accept Deputy Wilcox's testimony that he gave Juan a "touch prompt" on the side, and that Juan shrugged his shoulders and turned around himself, the reasonable inference being that Juan had either finished urinating or stopped himself urinating, and turned away from the toilet on his own.  Basically, the evidence, when viewed in the light most favorable to the judgment, shows that Deputy Wilcox was walking Juan back out of the bathroom after effectively telling him, "C'mon, you cannot be in here right now," and that Juan threw a punch at the deputy as he had just started to escort Juan out of the restroom.

The People filed a petition (Welf. & Inst. Code, § 602) alleging that Juan had committed the crime of using force or violence to resist an executive officer in the performance of his duty. (Pen. Code, § 69.) The charge was tried to the juvenile court, at which time the People presented evidence establishing the facts summarized above. At the conclusion of trial, the court found Juan committed the charged crime and declared him a ward of the court. At the disposition hearing which followed, the court terminated a previous order placing Juan in a community camp placement. The court ordered that "conditions of probation [were to] remain in effect." The court ordered Juan suitably placed under the supervision of the probation department. As custody was taken from Juan's parents, the court set a maximum term of confinement of four years and eight months.

Juan filed a timely notice of appeal.

## DISCUSSION

**I.      Deferred Entry of Judgment**

Juan contends the District Attorney erred in determining that he was ineligible for a deferred entry of judgment (DEJ) program. He asks our court "to remand his case to the juvenile court for a determination of suitability" for a DEJ program. Inexplicably, the respondent's brief filed by the People does not address this contention. We decline to find error on the record before us on appeal.

The DEJ process in juvenile proceedings is governed by sections 790 through 795 of the Welfare and Institutions Code.[2] Under this statutory scheme, the prosecutor has a mandatory statutory duty to undertake an initial assessment and to make a determination of whether a minor is "eligible" for a DEJ program.[3] When the prosecutor determines that a minor is eligible for a DEJ program, the minor may agree that he or she wants to accept DEJ. In such a case, the matter is presented to the juvenile court for a hearing on

---

[2]      All further undesignated section references are to the Welfare and Institutions Code unless otherwise specified.

[3]      In making the initial eligibility determination, the prosecutor must make findings on whether six identified circumstances apply. (See § 790, subds. (a)(1)-(a)(6).)

3

whether the minor is "suitable" for a DEJ program based upon the consideration of certain statutory factors. The juvenile court has discretion in determining whether a minor is or is not suitable for a DEJ program. (*In re Usef S.* (2008) 160 Cal.App.4th 276, 283-284.) As part of the DEJ process, the minor must admit a charged offense. Upon his or her successful completion of a DEJ program, the charge is dismissed in accord with statutorily prescribed procedures. (§§ 791, 793.) On the other hand, an eligible minor may decide to reject DEJ, obviating the need for a hearing on the issue of his or her suitability for a DEJ program, and a trial ensues on a charged offense. (See *In re Kenneth J.* (2008) 158 Cal.App.4th 973, 979-980.)

Section 790, subdivision (b), states: "The prosecuting attorney shall review his or her file to determine whether or not [a minor is eligible for deferred entry of judgment in that] paragraphs (1) to (7), inclusive, of subdivision (a) apply. If the minor is [determined to be] eligible for deferred entry of judgment, the prosecuting attorney shall file a declaration in writing with the court or state for the record the grounds upon which the determination is based, and shall make this information available to the minor and his or her attorney. Upon a finding that the minor is . . . suitable for deferred entry of judgment and would benefit from education, treatment, and rehabilitation efforts, the court may grant deferred entry of judgment. . . . The court shall make findings on the record that a minor is appropriate for deferred entry of judgment pursuant to this article in any case where deferred entry of judgment is granted."

In Juan's current case, the prosecutor submitted a declaration in conjunction with the filing of the section 602 petition stating that she had determined Juan to be *ineligible* for a DEJ program.[4] Based on our review of the record, it does not appear that Juan objected to or otherwise challenged the prosecutor's DEJ ineligibility determination prior to the trial of the charged offense, or any other time. Accordingly, there was no record developed on the issue of DEJ eligibility, there was no hearing or court finding on Juan's

---

[4] Section 790, subdivision (b), does not expressly speak to what procedures are to be followed when the prosecutor determines that a minor is ineligible for a DEJ program.

4

suitability for a DEJ program, no occasion for Juan to admit the charged offense, and no indication he was willing to do.

On appeal, Juan contends the prosecutor's determination that he was ineligible for a DEJ program "was wrong." The implication inherent in Juan's contention is that the prosecutor's determination should be changed to indicate that he is eligible, meaning that his case should be remanded to the juvenile court so that it can evaluate his suitability and exercise its discretion whether to grant him a DEJ program.

On the record before us on appeal, we decline to find error in the prosecutor's determination on the issue of Juan's DEJ eligibility. The prosecutor's allegedly erroneous determination that Juan was ineligible for a DEJ program was the type of error which could have been addressed and corrected had Juan pointed out the error. (See, e.g., *People v. Simon* (2001) 25 Cal.4th 1082, 1103.) Further, had Juan raised a timely objection, the issue would have been developed, preserving a record for review. In this vein, there is nothing in the record to suggest that Juan was willing to admit the charged offense. To permit him to raise the DEJ issue on appeal would mean that a juvenile could forego admitting a charged offense, and take a chance at trial. Then, if the risk succeeded, there would be no charge. If the risk proved unsuccessful, a juvenile could appeal and claim an error associated with a DEJ eligibility determination without a developed record, and seek to undo the finding of guilt, and then seek a DEJ program with the end goal of having the charges dismissed after the successful completion of the program. We are satisfied that the record before us does not allow for meaningful examination of the DEJ eligibility issue.

## II.     Sufficiency of the Evidence

Juan contends the evidence is insufficient to support the juvenile court's finding that he committed the charged crime. Specifically, Juan contends the evidence did not establish that Deputy Wilcox was engaged in the performance of a *legal or lawful* duty at the moment that Juan first punched him. In Juan's words: "Although [he] had disobeyed an order, there was no [lawful] need for Wilcox to touch him while he was in the process

of relieving himself."  We find the evidence supports the juvenile court's determination that Juan violated Penal Code section 69.

Juan is correct that Penal Code section 69 may be violated in two different ways, and that the theory upon which his case was litigated required the prosecution to prove that Deputy Wilcox was engaged in the performance of a legal or lawful duty when Juan used force or violence to resist the deputy.  (See *In re Manuel G.* (1997) 16 Cal.4th 805, 815-816.)  Penal Code language concerning an official's "performance of his duty" has long been interpreted to mean that an aggressor who uses force or violence to resist an official may be found to have committed a public offense.  If, however, the official/victim is ultimately determined to have been engaged in an unlawful act, the aggressor may be found to have committed a simple assault or battery, but not an act of violence against an official "'in the performance of his duty.'"  (Cf. *People v. Curtis* (1969) 70 Cal.2d 347, 355-356 [discussing Penal Code section 148]; and see also *In re Manuel G., supra*, 16 Cal.4th at pp. 815-816.)  In short, Penal Code section 69 requires the prosecution to present evidence proving a person resisted an executive officer who was engaged in the "*performance of his legal or lawful duty*."

We have no doubt that Deputy Wilcox was performing his legal or lawful duty at the time he was supervising a group of camp wards in the restroom area, including when he was giving orders to Juan to leave the restroom and return to his bed, and acting to get Juan to comply with the deputy's directives.

Nonetheless, Juan argues that Deputy Wilcox's actions inside the restroom may be parsed into discretely-examined, moment-by-moment increments.  Further, that at the precise moment Deputy Wilcox "touched" Juan, the deputy was acting in an unlawful manner.  Basically, Juan argues a probation camp deputy is acting in an unlawful manner whenever he applies any type of physical contact upon a ward who is engaged in the act of urinating.  Assuming without deciding that a probation camp deputy is never lawfully permitted to impart any type of physical contact upon a urinating ward (whether the contact is a yanking by the shirt collar, or a "prompt touch" on the side), it does not follow that the juvenile court's finding that Juan violated Penal Code section 69 must be

6

reversed.[5]  As we discussed above, the evidence, when viewed in the light most favorable to the judgment, shows that Juan was not urinating, that he had turned around, and that he had begun walking out of the restroom, when he sucker-punched Deputy Wilcox, who was escorting Juan out of the bathroom.  Juan's use of force or violence did not take place during a time that Deputy Wilcox was purportedly engaged in an unlawful act.

For similar reasons, we reject Juan's argument that the evidence failed to prove that at the instant he punched Deputy Wilcox, Juan acted with the intent to interfere with or impede the deputy in the performance of his legal or lawful duty.  Again using Juan's own words:  "[My] punching [Deputy Wilcox] was not . . . an attempt to resist the officer's performance of his duties, it was a post hoc angry and inappropriate response to being physically touched or grabbed while [I] was in the act of urinating."  In our view, Juan's argument is an invitation to our court to reweigh the evidence, and substitute a different conclusion for that of the juvenile court.  This is not our role on appeal.  (*In re Roderick P*. (1972) 7 Cal.3d 801, 809; *In re Babak S*. (1993) 18 Cal.App.4th 1077, 1088-1089 [a reviewing court does not reweigh the evidence; it examines the record in the light most favorable to the judgment to determine whether there is credible evidence, including reasonable inferences from the evidence, which supports the trier of fact's findings].)

A person's intent is rarely susceptible of direct proof.  For this reason, the law has long allowed intent to be inferred from the circumstances surrounding a charged offense, and recognizes that a trier of fact's reasonable inferences from the evidence are sufficient to constitute substantial evidence in support of a finding of a particular intent.  (See, e.g., *People v. Rodriguez* (1999) 20 Cal.4th 1, 11; *People v. Ceja* (1993) 4 Cal.4th 1134, 1138-1139; *People v. Pre* (2004) 117 Cal.App.4th 413, 420.)  Stated another way, evidence of a person's state of mind "'is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.]"  (*People v. Rios* (2013) 222 Cal.App.4th 542, 567-568.)

---

[5]  Juan has not cited any case which directly holds that a camp deputy may never lawfully touch a urinating ward; the People have not cited any case which directly holds that a camp deputy may lawfully touch a urinating ward.

Here, the juvenile court could reasonably infer that Juan intended to disrupt and interfere with Deputy Wilcox's performance of his legal and lawful duty. The evidence supports an inference that Juan wanted to disrupt the orderly operation of the restroom area and that he accomplished his intent. We have no doubt that Juan was, as he says, "angry" when he punched Deputy Wilcox, but the presence of anger does not defeat the further reality that he intended to disrupt and interfere with the deputy's performance of his duty.

## DISPOSITION

The judgment is affirmed.


BIGELOW, P.J.

We concur:


RUBIN, J.



FLIER, J.

8